## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | CR419-080 |
| | ) | |
| LEVI JOSEPH OURY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Defendant Levi Joseph Oury is charged with three counts of Interstate Stalking in violation 18 U.S.C. § 2261A(1).  He filed a Motion to Dismiss Counts One through Three for Unconstitutional Vagueness, doc. 42, a Motion to Dismiss the Indictment Based on Multiplicity, doc. 46, a Motion for Bill of Particulars, doc. 47, and a Motion to Suppress Evidence, doc. 58.  On November 6, 2019, the Court held a hearing on defendant's motions.  And on November 12, and November 13, respectively, defendant and the Government filed supplemental briefs detailing evidence from newly obtained body camera footage, which the Court has reviewed in full.  Doc. 63, doc. 64.  For the following reasons, the motions should be **DENIED**.

1

## BACKGROUND

Defendant was indicted on May 8, 2019 for three counts of interstate stalking.  Doc. 3.  The indictment alleges that from March 10, 2019 to March 15, 2019, defendant traveled from West Virginia to Georgia with the intent to harass and intimidate, and with the intent to place under surveillance with intent to harass and intimidate an individual identified as K.M.J. as well as her mother and father.  *Id*. at 1-3.   After investigating of defendant, the Government received information detailing defendant's years-long history of harassing K.M.J. and her family in person and via various electronic devices, as well as threatening communications with various other individuals.  *See, e.g.*, doc. 58-1.  Likewise, defendant had traveled on more than one occasion to locations where the victim worked or resided.  *Id.*  The Government obtained an arrest warrant for defendant.  *Id.*  Federal and local law enforcement officers executed that warrant in the morning of May 14, 2019 at a four-room apartment in Morgantown, West Virginia where defendant was a student.  Doc. 58 at 1-2.  The officers retrieved keys, announced their presence, and entered the apartment where they found defendant sleeping inside.  *Id*. at 2.  Officers arrested him in his bedroom

where at least one phone and a laptop were clearly visible. They then handcuffed him and moved him to the living room. Because he was in his sleeping clothes, the officers retrieved pants and shoes for him upon his request.

While executing the arrest warrant and obtaining defendant's clothes, officers observed a computer, three cell phones, and a note which had the first name of K.M.J. *Id.* at 3. These items were referenced in an affidavit used to obtain a search warrant of the apartment. *Id.* Upon executing the search warrant, officers seized electronic devices and documents. *Id.* Officers also obtained a search warrant for the devices' contents, which, in turn, led to certain evidence which defendant believes the Government will use at trial. *Id.*

Defendant objects to the seizures arguing that they were not justified under the plain view doctrine, *id.* at 3, that there is no probable cause for the search warrant, if the portions of the search warrant referencing the observed items are excised, *id.* at 6, and that good faith cannot justify the search, *id.* During the hearing, the Government and defendant provided to the Court six video clips taken from two body

3

cameras officers wore on the day of the arrest, and the Court heard testimony from one of the arresting officers.

In addition to challenging the seizure of certain items from defendant's room, defendant also argues that the indictment is unconstitutionally vague, doc. 42, that it should be dismissed as duplicative, doc. 46, and that he is entitled to a bill of particulars, doc. 47. At the same hearing where the Court took evidence on defendant's motion to suppress, the Court also heard argument on those motions.

## ANALYSIS

### I.   Motion to Dismiss Counts 1-3 for Vagueness

Defendant argues that the portion of the statute under which he is charged, 18 U.S.C. 2261A(1), is unconstitutionally vague and therefore in violation of the Fifth Amendment.  The statute reads as follows:

Whoever—

(1) travels in interstate or foreign commerce or is present within the special maritime and territorial jurisdiction of the United States, or enters or leaves Indian country, with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, and in the course of, or as a result of, such travel or presence engages in conduct that—

(A)   places that person in reasonable fear of the death
of, or serious bodily injury to—

(i)    that person;

(ii)   an immediate family member (as defined in
section 115) of that person;

(iii)  a spouse or intimate partner of that person;
or

(iv)   the pet, service animal, emotional support
animal, or horse of that person; or

(B)   causes, attempts to cause, or would be reasonably
expected to cause substantial emotional distress to
a person described in  clause (i), (ii), or (iii) of
subparagraph (A).

*Id.* Defendant argues that the statute is both unconstitutional as applied

and facially because it fails to provide adequate notice to defendant of his

illegal conduct and will result in discriminatory enforcement.  Doc. 42.

He focuses on the sections which criminalize "placing [an individual]

under surveillance," that "causes substantial emotional distress to that

person, a member of the immediate family . . ." *Id.* at 5.  He alleges that

what constitutes "placing under surveillance" is inadequately defined,

requiring excessive guesswork on the part of defendant as to the legality

of his conduct.   He also alleges that it is unclear what the term

"substantial emotional distress" means, exposing defendants to prosecution for an unreasonable person's unjustified fear. *Id.*

"If a vagueness challenge to a statute does not involve the First Amendment, the analysis must be as applied to the facts of the case." *United States v. Duran*, 596 F.3d 1283, 1290 (11th Cir. 2010) (citing *United States v. Mazuri*, 419 U.S. 544, 550 (1975)). A criminal statute is impermissibly vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008) (citations omitted). "In analyzing a vagueness claim, the first step in determining whether a statute provides fair warning is to begin with the language of the statute itself." *Duran*, 596 F.3d at 1291 (citing *United States v. Hunt*, 526 F.3d 739, 743 (11th Cir. 2008). "Where the language alone sets forth plainly perceived boundaries, no further inquiry is necessary." *Id.* (citing Hunt, 526 F.3d at 744). In the context of criminal cases however, "[c]ourts must evaluate statutes with criminal penalties by stricter standards than they evaluate statutes with only civil penalties." *United States v. Matusiewicz,* 84 F. Supp. 3d 363, 374 (D. Del. 2015) (citing *Village of Hoffman Estates v.*

*Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982)).   Nevertheless, "[s]imply because a criminal statute could have been written more precisely does not mean the statute as written is unconstitutionally vague."   *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992) (citing *United States v. Powell*, 423 U.S. 87, 94 (1975)).

The plain language of this statute is simply not vague.   Although neither the Government nor defendant identified any cases interpreting the relevant portion of § 2261A, many courts have interpreted similar language in the "cyberstalking" portion of § 2261A.   *See, e.g. United States v.* Shrader, 675 F.3d 300 (4th Cir. 2000); *United States v. Petrovic*, 701 F.3d 849 (8th Cir. 2013); *United States v. Sayer*, 748 F.3d 425 (1st Cir. 2014); *United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014);  *United States v. Conlan*, 786 F.3d 380 (5th Cir. 2015); and *United States v. Bowker*, 372 F.3d 365 (6th Cir. 2004). Those courts have determined that the term "substantial emotional distress" is commonly understood to mean "mental distress, mental suffering, or mental anguish . . . ".   *See, e.g., Veile v. Martinson*, 258 F.3d 1180, 1189 (10th Cir. 2001).  To that end

7

it is not an "esoteric or complicated term[] devoid of common understanding." *Osinger*, 753 F.3d. at 945.[1]

Likewise, the other phrases which defendant targets, including "place under surveillance," and "harassing" or "intimidating" do not rise to the level of unconstitutional vagueness. *See, e.g., Wollschlaeger v. Governor, Florida*, 848 F.3d 1293, 1320 (2017) (explaining that generally, words which have ordinary, commonly understood meanings are not considered vague). Moreover, it is not enough—under the terms of the statute—to merely place someone "under surveillance," an individual must also engage in an act which causes or would attempt to cause substantial emotional distress or places an individual in reasonable fear of harm to their selves or others. This reliance on acts "directed towards a specific person resulting in substantial emotional distress is sufficiently

---

[1] While some courts have determined that the statute at issue is unconstitutional as applied, *see e.g., United States v. Cassidy*, 814 F. Supp. 2d 574 (D. Md. 2011), those cases involved free speech allegations occasionally against public individuals. Defendant makes no similar allegation here regarding his speech rights. Another similar case involved a state cyberstalking statute and, while it did compare the language in the federal and the state statutes, did not directly interpret the statue at issue here. *See Rynearson v. Ferguson*, 355 F. Supp. 3d 964 (W.D. Wash. 2019). That case noted that while speech which is emotionally distressing or outrageous is protected "especially where that speech touches on matters of political, religious, or public concern." *Id.* at 971. Defendant however, has made no arguments that his First Amendment rights have been violated, relying instead only on the Fifth Amendment's vagueness doctrine.

specific to put an ordinary person on notice of proscribed conduct." *Gray v. Kohl*, 568 F. Supp. 2d 1378, 1390 (S.D. Fla. 2008) (citations omitted).

The scienter and objective reasonableness requirements of § 2261A also prevent this statute from being vague.  Section 2261A requires that the defendant act "with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person."  "This mens rea requirement reduces the risk that a person might commit the actions the statute proscribes without having notice of their unlawfulness." *Matusiewicz*, 84 F. Supp. 3d at 374 (citing *Village of Hoffman Estates*, 455 U.S. at 499 ("[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.")).  This scienter requirement, along with the objective standard applicable to the fear or emotional distress of the victim, make this case one for which there is no impermissible vagueness.  As *Matusiewicz* explained,

> Section 2261A 'imposes an objective standard relating to the fear or emotional distressed that a victim suffers as a result of a defendant's travel or course of conduct undertaken with criminal intent.'  . . . The jury must find that a **reasonable** person facing the same circumstances would react as the victim did.   This objective standard alleviates concerns that the statute could be enforced based on a specific victim's disproportionate reaction to a perpetrator's conduct.

*Id.* at 374-75.[2]   In short, this statute does not "merely set out the subjective effects of conduct and impose[] penalties for causing that injury." *Shrader*, 675 F. 3d at 311.  Rather, "the government must prove both intent and [objective] effect, [thus] we need not worry that the statute sets an unclear trap for the unwary." *Id.*  Accordingly, defendant's motion to dismiss based on unconstitutional vagueness should be **DENIED**.

## II.    Motion to Dismiss Based on Multiplicity

Defendant argues that the indictment is multiplicitous because it charges a single offense in more than one count.  Doc. 46.  Specifically, the indictment alleges a single "travelling" in interstate commerce that led to conduct causing distress to the victim and to each of her parents. *Id.*  He also alleges that the victim in this case was only aware of defendant's actions in Georgia because the Government alerted her to the circumstances.  *Id.* at 3.  Finally, he argues that this district is improper because the activities relating to the victim's parents did not occur in this district, but rather in the Northern District of Georgia.  *Id.* at 2.

---

[2] *Matusiewicz* interpreted the cyberstalking portion of § 2261A—but the rationale remains the same.

> None of defendant's arguments allow relief in this case.
>
> The rule against multiplicity is rooted in the Double Jeopardy Clause of the Fifth Amendment, which serves both the familiar function of prohibiting "successive prosecutions for the same offense" as well as "the imposition of cumulative punishments for the same offense in a single criminal trial." *United States v. Ragins,* 840 F.2d 1184, 1187 (4th Cir. 1988).   When a defendant is charged with multiple violations of the same statute arising from the same course of conduct, the court must consider "[w]hat Congress has made the allowable unit of prosecution," *Bell v. United States,* 349 U.S. 81, 81 (1955) (quoting *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221 (1952)).   "To do so, we must look to the language of the statute, being mindful that any ambiguity must be resolved in favor of the defendant under the rule of lenity."   *United States v. Bennafield,* 287 F.3d 320, 323 (4th Cir. 2002).

*Shrader*, 675 F.3d at 313.  The Court in *Shrader* determined that the "unit of prosecution" in § 2261A is the victim, not the conduct itself.  *Shrader* evaluated the statute's plain terms, which require an intent to either injure or cause distress *to a particular individual*.  *Id.*  Thus, where multiple individuals are allegedly harmed by a single course of conduct, there are multiple violations.  This Court sees no reason to diverge from that decision, considering especially that each count will require proof of a unique element.

The fact that the conduct occurred across multiple different districts does not prohibit it from being prosecuted here.  Under 18 U.S.C.

§ 3237(a), any offense begun in one district and completed in another, or committed in more than one district, may be prosecuted in any district in which it was begun, continued, or completed and there is no question that defendant passed through this district while on his way to the victim's place of employment.[3]

Finally, the case defendant cites, *United States v. Moreland*, 207 F. Supp. 3d 1222 (N.D. Okla. 2016), is clearly distinguishable.  In *Moreland*, the government charged the defendant with injuries to the victim's family members after the *victim* sent copies of the harassing commentary to her family.  *Id.*  Here, it was defendant's own actions in driving to the victim's parents' home that led to the second and third individual charges.  The indictment plainly alleges that defendant travelled from West Virginia to Georgia and back with the intent to harass the victims.  Doc. 3 at 1.  It also

---

[3] Defendant's argument that the indictment is multiplicitous because the victim was unaware of the activity until after it occurred is likewise unavailing.  Nothing in the statute requires a victim's subjective awareness of certain activities at the time the activities occurred in order to prosecute the crime.  It merely requires that in the course of or as a result of activity defendant undertook, another person in placed in reasonable fear.  *United States v. Walker*, 665 F.3d 212, 225 (1st Cir. 2011) (Court finding that similar argument "would read this second class of prohibited conduct out of the statute, and adopting it would render nugatory the 'as a result of' language.  This, in turn, would flout the venerable principle that '[a]ll words and provisions of statutes' should 'be given effect.'" (*citing United States v. Ven-Fuel, Inc.*, 758 F.2d 741, 751 (1st Cir. 1985))).  Regardless, this appears to be less about multiplicity and more about the ability of the Government to prove their case which is an argument left to the jury at trial.

alleges that he then traveled and engaged in conduct that would reasonably be expected to cause substantial emotional distress to the victim's mother and father. *Id.* at 2-3. Those allegations sufficiently support each of the individual charges in the indictment. As a result, defendant's motion to dismiss for multiplicity should be **DENIED**.

### III.   Motion for A Bill of Particulars

Defendant also moves for a bill of particulars because he would like to know what "conduct" caused substantial emotional distress to the victims. Doc. 47. He also waves at an argument regarding double jeopardy if a bill of particulars is not provided to him. *Id.* However, defendant acknowledges that he has received substantial discovery from the Government. A bill of particulars "is not required where the information sought has already been provided by other sources, such as the indictment and discovery." *United States v. Roberts*, 174 F. App'x 475, 477 (11th Cir. 2006) (citations ommitted). Accordingly, as long as the information has been provided to the defendant in some fashion there is not an independent obligation to furnish additional information via a bill of particulars. As defendant's arguments at the hearing did not advance

any substantial argument in opposition to the Government's position in this regard, there is no basis for a further bill of particulars.

Regarding defendant's argument regarding the concern for double jeopardy, it does not appear that defendant raises a viable argument. Generally, the Double Jeopardy Clause prevents a defendant from being prosecuted twice for the same offense. *Puerto Rico v. Sanchez Valle*, ___ U.S. ___, 136 S.Ct. 1863 (2016). However, as the Government points out, when determining whether an individual is subject to double jeopardy "the court may refer to the entire record of the prior proceeding and [will] not be bound by the indictment alone." *United States v. Steele*, 178 F.3d 1230, 1235 (11th Cir. 1999) (citing *United States v. Jaswal*, 47 F.3d 539, 542-43 (2d Cir. 1995)). Accordingly, "defendant's claimed lack of specifics in the current indictment will not prejudice [him] in any potential future invocation of the protection of the double jeopardy provision of the Fifth Amendment, as []he will have the entire record of the current proceedings upon which to rely." *United States v. Perez*, 2006 WL 1737449, at *3 (S.D. Ga. June 19, 2006).

## IV.  Motion to Suppress

Although the Court has already detailed the general background of this case, additional detail is warranted prior to diving into defendant's suppression motion.  Briefly, officers executed an arrest warrant for defendant's arrest at his apartment in West Virginia on May 14, 2019. During the execution of the arrest warrant, after Mr. Oury was handcuffed and taken out of his room, he requested clothes for his transportation to jail.  He requested that the agents retrieve certain specific items from his room.  When they entered the room, they observed a piece of paper on top of a desk with the handwritten note of "Wheaton [first name of Victim A]" with certain hand drawn circles that were crossed out.  They also observed a computer and three cell phones although the laptop and at least one cell phone were clearly visible when officers entered defendant's room to execute the arrest warrant.[4]  The agents then sought a search warrant for his room asserting probable cause as follows:

> based on the document referencing Victim A in Oury's apartment and Oury's historic use of computers and cell phones to communicate to or about Victim A, there is probable

_____

[4] Both the Government and defendant agreed to the admission of certain body camera footage of the execution of the arrest.  To the extent the Court references viewing footage of that arrest, the Court references that admitted footage.

cause to believe that Levi Oury's apartment at 442 Oakland
St., University Park West, Unit 313C, in Morgantown, West
Virginia contains documents, materials, and devices that
constitute evidence of the crime of interstate stalking, in
violation of 18 U.S.C. §2261A.

Defendant contends that the officers who executed the arrest

warrant violated the Fourth Amendment when they viewed the cell

phones, laptop, and note during its execution. Their subsequent reference

in the search warrant application, rendered the search and ultimate

seizure, fruit of the poisonous tree.  Defendant raises three arguments

that the items' seizure violated the Fourth Amendment.  First, he argues

that the seizures were not justified under the plain view doctrine.  Doc.

58 at 4.  Although the argument is not entirely clear, he appears to argue

that the viewing of these items in defendant's room constituted a

seizure—notably, he does not argue that any of the items were touched,

moved, or adjusted in anyway when they were viewed.  *Id.*  Assuming

that officer's observation of those items was an illegal search or seizure,

the search warrant which necessarily relied upon those observations to

establish probable cause is rendered illegitimate.  *Id.* at 5-6.  Finally, he

argues officers could not have relied on the issued search warrant in good

faith.  *Id.* at 6.  That conclusion, in turn, would render the seizure of those

items invalid and, ultimately, taints the search of the computer and cell phones' contents which were found in defendant's room.  *Id.* at 7-8. Notably, however, defendant makes no argument that the arrest warrant which initially justified officers' entry into defendant's home was invalid.

The first, and most important issue, for decision is whether there was either a "search" or a "seizure" when the officers observed the listed items in defendant's room while executing a search warrant.  "[A] trial court may refuse a defendant's request for a suppression hearing and motion to suppress if the defendant fails to allege facts that, if proved, would require the grant of relief." *United States v. Richardson*, 764 F.2d 1514, 1526-27 (11th Cir. 1985).  Thus, unless defendant alleges that there was either a search or a seizure when the officers observed the items in his room during the execution of the arrest warrant, the Fourth Amendment is never implicated—thus it could not be violated.  " '[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.' " *United States v. Bervaldi*, 226 F.3d 1256, 1263 (11th Cir. 2000) (quoting *Payton v. New York,* 445 U.S. 573, 603 (1980)).  If officers

executing an arrest warrant have a reasonable belief "that the location to be searched is the suspect's dwelling," and "that the suspect is within the residence at the time of entry," *United States v. Magluta*, 44 F.3d 1530, 1535 (11th Cir. 1995), officers "may search the entire premises of a residence, until the suspect is found," *United States v. Williams*, 871 F.3d 1197, 1201 (11th Cir. 2017).   Having conducted that search for the individual, any items the officers observed are not the product of a search, as the officers had the right to be present in the area by virtue of the valid arrest warrant.  While *Arizona v. Hicks*, 480 U.S. 321 (1987) establishes that officers inside a home may not manipulate objects they encounter to have a more through view, there is no allegation that such manipulation occurred here and as a result, there is no argument that there was an illegal search or seizure.

Even if the Court assumes that there was a "search" of defendant's bedroom, it was lawful search incident to his arrest.  A number of courts have acknowledged "that even when an arrestee is handcuffed, a search of the area that was within the defendant's immediate control when he was arrested is valid so long as it is conducted within a time span close to the arrest and while the defendant is still within the general proximity

of the arresting officers." *United States v. Rodriguez-Alejandro*, 664 F. Supp. 2d 1320, 1348 (N.D. Ga. 2009) (quoting *United States v. Massenberg*, 45 F. App'x 115, 120 (3d 2002) (citations omitted);  *see also United States v. Turner*, 926 F.2d 883, 887-88 (9th Cir. 1991) (upholding search of area of room in defendant's immediate control before his arrest, although defendant had been handcuffed and removed from room); *United States v. Abdul-Saboor*, 85 F.3d 664, 670-71 (D.C. Cir. 1996) (search upheld although defendant had been handcuffed and was outside bedroom in which he was arrested).   In this case, the "search" was conducted when defendant was within the general proximity of the arresting officers and closely in time to the arrest itself.   Because defendant failed to allege facts which, if proved, would establish either a Fourth Amendment violative search or seizure, the burden never shifted to the Government and the motion should be properly denied.   Because defendant does not allege facts which if true would require a grant of relief, the motion to suppress should be **DENIED.**

Further assuming, contrary to the conclusion above, that defendant establishes the necessary facts of an illegal search or seizure when the items were observed, the subsequent search warrant remains valid.

"[W]hen an affidavit in support of a search warrant contains information which is in part unlawfully obtained, the validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue." *James v. United States*, 418 F.2d 1150, 1151 (D.C. Cir. 1969).  This Circuit employs a two-part test to determine whether the evidence seized pursuant to a warrant is admissible when the warrant contains information obtained in violation of the Fourth Amendment.  *United States v. Albury*, 782 F.3d 1285, 1291 (11th Cir. 2015).

> First, we excise from the affidavit any information gained from the illegal initial entry and determine whether the remaining information supports a finding a probable cause.  If the remaining information supports a probable cause finding, we then determine whether the officers' decision to seek the warrant was not prompted by what they had seen during the initial entry.  If the warrant would have been sought absent the illegal entry, the evidence seized pursuant to the warrant is admissible.

*Id.* (internal citations and quotations omitted).  Even if the Court were to excise from the affidavit all references to the cell phones and laptop observed in defendant's room, the affidavit contained sufficient evidence

to support a finding of probable cause.[5]  The affidavit lays out defendant's history of engaging in in-person and electronic harassment of the victim and her family.  It includes references and screenshots of defendant's online, social media posts regarding the victim.  It details the arrest of defendant, including the location and clearly spells out the belief that the room "contains documents, materials, and devices that constitute evidence of the crime of interstate stalking."  Doc. 58-1 at 22.  Most notably, it relies of defendant's "historic use of computers and cell phones," not merely on the existence of electronic equipment in his room, to support the search warrant.  In short, even removing the references to the note and the four electronic devices observed during the execution of the arrest warrant, probable cause existed to issue the search warrant. Likewise, the Court is satisfied from the information contained in the

_____

[5] Again, to even embark upon this analysis the Court must assume, contrary to the implication of the undisputed facts discussed above, that each of the four items defendant identified would be inadmissible.  However, the Court points out that defendant's objection to the viewing of these items is that they were observed after law enforcement officers had arrested defendant, removed him from his room, and then returned to the bedroom without his valid consent or other justification for entering the room.  However, as was noted above, *supra* p. 15, at least one cell phone and one laptop were plainly visible during the execution of the arrest warrant itself—and defendant makes no argument why those items were not viewable by law enforcement officer.  Because those items were visible by the officers in a location where they had a right to be pursuant to a valid arrest warrant there was no Fourth Amendment violation.

search warrant as well as the testimony of the officers, that they would have sought a search warrant even if no electronic devices had been plainly visible during defendant's arrest.

Finally, the Government argues that "even if the evidence had been seized prior to the issuance of a search warrant, such seizure would have been appropriate under the plain view doctrine." Doc. 60. Although the Court is concerned that the Government has misconstrued the implication of the items' ready visibility, its argument is not obviously incorrect. "Under the plain view doctrine, the warrantless seizure of an item is permissible where '(1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent.' " *United States v. Folk*, 754 F.3d 905, 911 (11th Cir. 2014) (*citing United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006); *Horton v. California*, 496 U.S. 128, 136-37; *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001). As the Government notes, the agents and officers were in the room pursuant to a valid arrest warrant. *See e.g.*, *United States v. Rodriguez*-Alejandro, 664 F. Supp. 2d 1320, at 1344-45 (N.D. Ga. 2009) (noting that agents

were lawfully present in bedroom where they seized cell phones pursuant to a valid arrest warrant).  Thus, anything that was visible to them was seizable, at least to the extent its incriminating character was immediately apparent.  The Government waves at an argument that the computer and cell phones were obviously incriminating by virtue of the fact that defendant used electronic devices to post on Facebook and send text messages.  Doc. 60 at 6.  Considering the information presented in the warrant affidavit as well as the testimony from the officer at the suppression hearing that the officers would have been aware of defendant's history of electronic device use, the second prong of the plain view test is also satisfied.

## CONCLUSION

For the foregoing reasons, defendant's motions should be **DENIED**.  This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for

additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED**, this 10th day of December, 2019.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA