# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

UNITED STATES OF AMERICA,

v.

LEVI OURY,

    Defendant.

CIVIL ACTION NO.: 4:19-cr-080

## O R D E R

After a careful *de novo* review of the entire record, the Court concurs with the Magistrate Judge's December 10, 2019 Report and Recommendation, (doc. 65), to which the Defendant has filed objections, (doc. 70). Accordingly, the Court **ADOPTS** the Report and Recommendation ("R&R") as the opinion of the Court and **DENIES** Defendant's Motions to Dismiss, (docs. 42, 46), Defendant's Motion for Bill of Particulars, (doc. 47), and Defendant's Motion to Suppress, (doc. 58).

## BACKGROUND

Defendant was indicted on May 8, 2019 for three counts of interstate stalking. (Doc. 3.) The indictment alleges that, from March 10, 2019 to March 15, 2019, Defendant traveled from West Virginia to Georgia with the intent to harass and intimidate, and with the intent to place under surveillance with intent to harass and intimidate, an individual identified as K.M.J. as well as her mother and father. (Id. at pp. 1–3.) After investigating Defendant, the Government received information detailing Defendant's years-long history of harassing K.M.J. and her family in person and via various electronic devices, as well as making threatening communications to various other

individuals who have a connection to K.M.J.  (See, e.g., doc. 58-1.)  Likewise, Defendant had traveled on more than one occasion to locations where the victim worked or resided.  (Id.)  The Government obtained an arrest warrant for Defendant.  (Id.)  Federal and local law enforcement officers executed that warrant on the morning of May 14, 2019, at a four-room apartment in Morgantown, West Virginia, where Defendant was attending college.  (Doc. 58, pp. 1–2.)  When no one answered their knock on the door, the officers retrieved keys from the landlord, announced their presence, and entered the apartment where they found Defendant sleeping inside.  (Id. at p. 2; doc. 58-1, pp. 21–22.)  Officers arrested him in his bedroom.  After handcuffing him, they moved him to another room.  (Doc. 58-1, p. 22.)  Because he was in his sleeping clothes, the officers retrieved specific items of clothing from his room upon his request.  (Id.)

While executing the arrest warrant and obtaining Defendant's clothes from his room, officers observed a computer, three cell phones, and a note which had the first name of K.M.J., along with the name of the college he had attended with her and "hand drawn circles that were crossed out."  (Id.; see also doc. 58, p. 2.)  These items were referenced in an affidavit used to obtain a search warrant of the apartment.  (Doc. 58-1, p. 22.)  Upon executing the search warrant, officers seized electronic devices and documents from Defendant's room.  (Doc. 58, p. 3.)  Officers also obtained a search warrant for the devices' contents, which, in turn, led to the discovery of certain evidence which Defendant believes the Government will use at trial.  (Id.)

Defendant objects to the seizures, arguing that they were not justified under the plain view doctrine, (id. at p. 3); that, if the references to the items that were allegedly observed in "plain view" are excised from the search warrant application, there was no probable cause for the search warrant, (id. at pp. 5–6); and that an argument that the officers acted in good faith in seizing the items after obtaining a search warrant does not justify the search, (id. at p. 6).

The Magistrate Judge held a hearing on the at-issue motions on November 6, 2019. (See Doc. 61.) During the hearing, the Government and Defendant provided to the Court six video clips taken from two body cameras that officers were wearing on the day of the arrest, and the Court heard testimony from one of the arresting officers.

In addition to challenging the seizure of certain items from Defendant's room, Defendant also argues that the indictment is unconstitutionally vague, (doc. 42), that it should be dismissed as duplicative, (doc. 46), and that he is entitled to a bill of particulars, (doc. 47). At the November 6, 2019, hearing the Court heard argument on those motions.

Following the hearing, Defendant and the Government filed supplemental briefs detailing evidence from newly-obtained body camera footage. (Docs. 63, 64.) The Magistrate Judge issued his R&R on December 10, 2019, recommending that each of Defendant's motions be denied. After receiving an extension, (doc. 67), Defendant filed objections, (doc. 70).

## ANALYSIS

### I. Defendant's Motion to Dismiss for Vagueness

Defendant raises a host of challenges to the Magistrate Judge's determination that the statute under which he is currently being prosecuted, 18 U.S.C. § 2261A, is not void for vagueness. As an initial matter, he challenges the Court's application of the standard for interpreting void-for-vagueness challenges which do not involve the First Amendment in light of the United States Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015). Regardless of whether the standard to be applied has changed—a fact which is unclear even from a reading of the Supreme Court's own opinion or subsequent jurisprudence, see, e.g., United States v. Blaszczak, 947 F.3d 19, *12 (2d Cir. 2019) (citing United States v. Mazurie, 419 U.S. 544, 550 (1975), for the proposition that "vagueness challenges to statutes which do not involve First

Amendment freedoms must be examined in the light of the facts of the case at hand")—the Magistrate Judge's R&R was neither cabined solely to an interpretation of Defendant's actions nor unfairly reliant upon those actions in finding the statute not vague. In fact, the R&R specifically addressed each of the identified portions of the statute to determine whether, in any scenario, the language was vague.

Defendant also contends that the *scienter* element does not save the statute from vagueness because there is no objective standard applicable to the victim's fears.[1] (Doc. 70, p. 13.) Defendant supports this argument by claiming that the Government has not made the concession that there *is* an objective standard relating to the fear or emotional distress that a victim may suffer. (Id.) However, this too is a misstatement of the Government's position, as its initial response to the Motion to Dismiss clearly stated that a jury would need to decide "whether the victims' 'sensitivities' were warranted and whether fears of death or serious bodily injury were indeed reasonable." (Doc. 45, p. 4.) Accordingly, the Court concludes that the Government has indeed acknowledged that a determination of the reasonableness of the victim's fears is indeed a requirement of 18 U.S.C. § 2261A.

Likewise, Defendant takes issue with the Magistrate Judge's use of cases interpreting the cyberstalking subsection of the statute, 18 U.S.C. § 2261A(2). Specifically, he argues that the fact that the cyberstalking subsection requires that a Defendant engage in a "course of conduct" materially distinguishes it from the one at issue here, because the at-issue stalking subsection (18 U.S.C. § 2261A(1)), by contrast, requires only a *single* act. (Doc. 70, p. 8.) However, the law

---

[1] Defendant makes this argument in two different ways, first arguing that the Magistrate Judge incorrectly read the statute (i.e., that the Magistrate Judge made a "grammatical error," (doc. 70, p. 3)), and also arguing that the scienter obligation does not save the statue. Because the Court concludes that there is an objective reasonableness standard, it rejects Defendant's argument that the Magistrate Judge made a grammatical error.

4

imposes liability for individual illegal acts as readily as it does acts involving multiple unlawful activities. Considering this, along with the fact that the statutes otherwise use nearly identical language, the distinction is one without a difference. Likewise, Defendant's suggestion that there is not some "continuity of purpose" required by the at-issue portion of § 2261A is disingenuous. While there is no requirement of multiple acts of internet stalking (for example), § 2261A(1) requires *both* an act of travel *and* conduct placing a person in reasonable fear of death or serious bodily injury. Moreover, while United States v. Shrader, 675 F.3d 300 (4th Cir. 2012), which the Magistrate Judge cited in his R&R, notes that there is no specific intent element as to each individual act making up a "course of conduct," the Magistrate Judge cited the case simply to show that Courts have imposed a specific intent element in § 2261A. As the Shrader court acknowledged, "[i]t of course remains open to a defendant to argue that the charged acts were innocent or mistaken, and therefore do not meet the clear textual requirement that the course of conduct 'evidenc[e] a continuity of purpose,' but that is an argument that sounds in sufficiency of the evidence, not vagueness." 675 F.3d at 312. So too, here, Defendant may argue that his acts were innocent or mistaken, but that is for the jury to decide, not this Court. Finally, the Magistrate Judge (and all counsel involved) acknowledged that there are no cases directly on point interpreting the portion of the statute that is applicable in this case. While the Court admittedly had to base its analysis to some extent on analogy to another subpart of the same statute, Defendant simply did not convince the Magistrate Judge—or this Court—that the statute is vague.

**II.     Defendant's Motion to Dismiss Based on Multiplicity**

In his objections, Defendant again argues that this case should be dismissed due to duplicity. (Doc. 70, p. 16.) The Magistrate Judge determined that the "unit of prosecution" in § 2261A is the victim, not the conduct itself. Looking to Shrader, the Magistrate Judge concluded

5

that the statute's plain terms required an intent to either injure or cause distress to a particular individual. (Doc. 65, p. 11.) Thus, where multiple individuals are allegedly harmed by a single course of conduct, there are multiple violations. I concur with this interpretation and see no reason to overturn it.

Likewise, the venue argument holds no water. Defendant cites <u>United States v. Cabrales</u>, 524 U.S. 1 (1998), for the proposition that he should only be charged in the Northern District of Georgia for the crimes where K.M.J.'s parents are listed as victims. However, Defendant ignores that <u>Cabrales</u> acknowledges that "[c]ontinuing offenses, . . . those begun in one district and completed in another, may be tried in any district in which such an act was begun, continued, or completed." <u>Id.</u> at 5 (citations and quotations omitted). Unlike the money laundering crimes alleged in <u>Cabrales</u>, in this case, Defendant is alleged to have *traveled* from West Virginia to—and, indeed, throughout various districts in—Georgia. <u>See</u> <u>id.</u> at 8 (noting that if the person charged had transported the funds from one district to another then it might be subject to prosecution as a "continuing offense"); <u>see also</u> <u>United States v. Auernheimer</u>, 748 F.3d 525, 535–36 (3d Cir. 2014) (noting that there was no evidence of "transfer, possession, or use" in charging district). Nothing in either of the cases cited by Defendant precludes this Court from exercising jurisdiction over the charged acts. The Court therefore **DENIES** Defendant's Motion to Dismiss based on multiplicity, (doc. 46).

### III.   Defendant's Motion for Bill of Particulars

Defendant raises no challenges to the Magistrate Judge's determination that no bill of particulars should issue. Having reviewed the record in the case, the Court concurs with the Magistrate Judge's recommendation. The Court therefore **DENIES** Defendant's Motion for Bill of Particulars, (doc. 47).

**IV. Defendant's Motion to Suppress Evidence**

Finally, Defendant again argues that the entry into his apartment constituted an illegal "search." (See Doc. 70, p. 23 ("[T]he issue comes up because during the second entry the agents clearly engaged in a warrantless search and made the observations that form the basis of Paragraph 65 from the warrant application.")). Defendant ignores a material part of the Magistrate Judge's R&R. The Magistrate Judge clearly concluded that Defendant never established that there actually was either a Fourth Amendment search or seizure. The Magistrate Judge explained:

> "'[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.'" United States v. Bervaldi, 226 F.3d 1256, 1263 (11th Cir. 2000) (quoting Payton v. New York, 445 U.S. 573, 603 (1980)). If officers executing an arrest warrant have a reasonable belief "that the location to be searched is the suspect's dwelling," and "that the suspect is within the residence at the time of entry," United States v. Magluta, 44 F.3d 1530, 1535 (11th Cir. 1995), officers "may search the entire premises of a residence, until the suspect is found," United States v. Williams, 871 F.3d 1197, 1201 (11th Cir. 2017). Having conducted that search for the individual, any items the officers observed are not the product of a search, as the officers had the right to be present in the area by virtue of the valid arrest warrant. While Arizona v. Hicks, 480 U.S. 321 (1987) establishes that officers inside a home may not manipulate objects they encounter to have a more through view, there is no allegation that such manipulation occurred here and as a result, there is no argument that there was an illegal search or seizure.
>
> Even if the Court assumes that there was a "search" of Defendant's bedroom, it was lawful search incident to his arrest. A number of courts have acknowledged "that even when an arrestee is handcuffed, a search of the area that was within the Defendant's immediate control when he was arrested is valid so long as it is conducted within a time span close to the arrest and while the Defendant is still within the general proximity of the arresting officers." United States v. Rodriguez-Alejandro, 664 F. Supp. 2d 1320, 1348 (N.D. Ga. 2009) (quoting United States v. Massenberg, 45 F. App'x 115, 120 (3d Cir. 2002) (citations omitted); see also United States v. Turner, 926 F.2d 883, 887–88 (9th Cir. 1991) (upholding search of area of room in Defendant's immediate control before his arrest, although Defendant had been handcuffed and removed from room*)*; United States v. Abdul-Saboor, 85 F.3d 664, 670–71 (D.C. Cir. 1996) (search upheld although Defendant had been handcuffed and was outside bedroom in which he was arrested). In this case, the "search" was conducted when Defendant was within the general proximity of the arresting officers and closely in time to the arrest itself. Because Defendant

> failed to allege facts which, if proved, would establish either a Fourth Amendment violative search or seizure, the burden never shifted to the Government and the motion should be properly denied.

(Doc. 65, pp. 17–19.) Defendant fails to engage with this analysis, and the Court concludes that the analysis was indeed proper. Although the Magistrate Judge went on to discuss whether the search warrant would be valid even assuming there *had* been a Fourth Amendment violative search or seizure, this was not necessary to the ultimate recommendation that the Motion to Suppress be denied. Accordingly, the Court overrules the objections and adopts the Magistrate Judge's opinion as the opinion of the Court. Defendant's motion to suppress is therefore **DENIED**, (doc. 58).

## CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation, (doc. 65), as the opinion of the Court and **DENIES** Defendant's Motions to Dismiss, (docs. 42, 46), Defendant's Motion for Bill of Particulars, (doc. 47), and Defendant's Motion to Suppress, (doc. 58).

**SO ORDERED**, this 4th day of February, 2020.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA