# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR419-080 |
| | ) | |
| LEVI JOSEPH OURY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant Levi Joseph Oury is charged with three counts of interstate stalking in violation 18 U.S.C. § 2261A(1). Doc. 3 (Indictment). The case was previously set for trial on April 7, 2020. *See* doc. 76 at 1. The Government moved to continue because several witnesses it intended to call were military personnel, stationed overseas, whose return was precluded by the early stages of what has emerged as the global COVID-19 pandemic. *See* doc. 80. The Court granted the continuance and trial is now scheduled to commence on June 2, 2020. *See* doc. 86. As a result of that continuance, and at the invitation of the District Judge, Oury filed a motion for reconsideration of his pretrial detention. Doc. 84. The Court held a hearing on that motion on April 2,

2020. Doc. 91 (minute entry). For the reasons explained below, that motion is **DENIED**.

## BACKGROUND

Defendant was indicted on May 8, 2019 for three counts of interstate stalking. Doc. 3. The indictment alleges that from March 10, 2019 to March 15, 2019, defendant traveled from West Virginia to Georgia with the intent to harass and intimidate, and with the intent to place under surveillance with intent to harass and intimidate an individual identified as K.M.J. as well as her parents. *Id*. at 1-3. The Government investigation revealed defendant's years-long history of harassing K.M.J. and her family, as well as threatening communications with other individuals. *See, e.g.*, doc. 58-1. Defendant had also traveled, on more than one occasion, to locations where the victim worked or resided. *Id.* Based on that information, the Government obtained an arrest warrant for defendant. *Id.* Federal and state officers executed that warrant in the morning of May 14, 2019 in Morgantown, West Virginia where defendant was a student. Doc. 58 at 1-2.

After a detention hearing, *see* doc. 27 (Minute Entry), the Court ordered Oury detained pending trial, doc. 28. The Court found that the

Government had demonstrated, by clear and convincing evidence, that no condition or combination of conditions of release would reasonably assure the safety of other individuals and the community. Doc. 28 at 2. The Order noted that "[t]he defendant's course of action over the last several years, (including provocative social media posts, threatening communications with mutual friends, and multistate travel that placed the defendant in close proximity to the alleged victim on multiple occasions) suggests that he is fixated upon the alleged victim to such a degree that the Court is unable to envision a set of conditions that would reasonably assure the safety of the community." *Id*. at 3. Defendant appealed that Order. Doc. 30. The District Judge affirmed, finding "by clear and convincing evidence that Defendant poses a significant danger to the safety of the alleged victims in this case and to the community, and any conditions of release would be inadequate to reasonably assure their safety." Doc. 44 at 1. It is that determination that Oury asks the Court to reconsider here.

## ANALYSIS

Although Oury's motion is styled as a motion for reconsideration, the issues it raises are more complicated. The Bail Reform Act

3

contemplates that a detention hearing may be "reopened . . . at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(f)(2)(B).  In addition to seeking to reopen the detention hearing, his counsel clarified that he also challenged the constitutionality, under the Fifth Amendment's Due Process clause, of continued detention.  Since these challenges require different analyses, the Court will address them sequentially.

I.      **Motion for Reconsideration**

At the hearing on his motion, defendant identified several circumstances he contends have changed since the Court's initial determination that warrant reopening of the detention hearing.  First, he contends that the risk of continued detention created by the global COVID-19 pandemic militates against such detention.  Second, he presented several witnesses and exhibits that he contends contradict, or at least countervail, the Government's showing of his dangerousness.

The Court can quickly, if not easily, dispose of defendant's argument that the COVID-19 pandemic supports his pretrial release. Although the Court is sensitive to the additional risks posed by the pandemic, those risks, as they currently stand, are not cognizable reasons for a criminal defendant's pretrial release under the Bail Reform Act, 18 U.S.C. § 3141, *et seq*. The United States District Court for the District of Kansas has recently discussed the relevance of COVID-19 to the analysis mandated by § 3142. *See United States v. Clark*, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). The court explained:

> A defendant's concerns that he or she would face heightened COVID-19 risks if incarcerated would not typically factor into a § 3142(f) analysis, which focuses on whether the court can fashion conditions of release that will reasonable assure the defendant is not a risk of nonappearance or a risk of harm to any others or the community. The risk of harm *to the defendant* does not usually bear on this analysis."

*Id.* A particular defendant's susceptibility to infection, because of age or other medical condition, *might* be relevant to an analysis under § 3142(i)'s "another compelling reason" prong. *Id.* Oury does not suggest any individualized susceptibility. The Court, therefore, agrees with the District of Kansas' conclusion that, although "mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely

serious health risks it presents[,] . . . a defendant should not be entitled to temporary release under § 3142(i)[, or, *a fortiori,* reconsideration of a determination under § 3142(f)] based solely on generalized COVID-19 fears and speculation." *Id.*[1]

The Court is also unconvinced that the additional evidence defendant presented at the hearing alters the detention determination. Oury presented testimony from his father, David Oury, and several other witnesses who presented character testimony. David Oury testified about his son's travel habits during the years before the events giving rise to the present charges. His testimony suggested that harassing or surveilling K.M.J. might not have been defendant's purpose in a portion of the travel charged in the indictment. This testimony, as defense counsel argued, might cast doubt on the Government's characterization of the travel-related conduct charged. Defense counsel also submitted

---

[1] On April 3, 2020, the United States Attorney General issued a memorandum to the United States Bureau of Prisons. The memorandum directs the BOP to review the status of inmates at several federal facilities to determine whether they are suitable for home confinement. As the representative of a separate branch of Government, the Attorney General's opinion cannot affect the Court's evaluation. Moreover, the Government has not indicated any alteration in its position on detention based on developing Department of Justice Guidance. The memorandum emphasizes, however, the extent to which officials in all branches and at all levels of government must continue to respond to the effects of the rapidly developing COVID-19 pandemic.

exhibits which he construed as undermining the Government's evidence related to defendant's intent. Such evidence is certainly relevant to the weight of the evidence against the defendant. *See* 18 U.S.C. § 3142(g)(2). However, to the extent that it diminishes that weight, it is not sufficient to alter the detention determination.[2]

Several other witnesses provided testimony in the nature of character evidence. This testimony also might weigh into the balance of the detention determination. *See* 18 U.S.C. § 3142(g)(3)(A). Two of the witnesses, Adam Lamnin, a family friend, and Alan Joubert, testified to their assessment of defendant's character several years before the events in question took place. The third, Abigail Reese, attested to defendant's good character during a period more proximate to the events in question, but conceded that she had no knowledge of defendant's interactions with the alleged victim.

---

[2] Specifically, David Oury testified that his son was in the habit of travelling to visit military installations, and that he and his son had visited Fort Stewart, near Savannah, Georgia prior to the travel alleged in Count One of the indictment. Such a habit might be relevant to Oury's intent when he made the trip charged in the indictment, but, even if the prior travel were relevant, it is not inconsistent with the intent alleged. It does not, therefore, significantly diminish the weight of the evidence against the defendant.

To be sure, the witnesses' testimony weighs in defendant's favor, but they add little to the Court's prior analysis of his character. *See* doc. 44 at 16-17. At the time of the initial detention determination, the District Judge noted that defendant "is a college student, . . . he has no criminal history[, and] he has loving family members with impressive credentials" supporting him. *Id.* at 16. All of witnesses at the hearing reinforced that assessment. The District Judge noted, on the contrary, "for each positive history and characteristic that the defense has highlighted, the record presents other attributes that bode more ominously[,]" including his "violent outbursts . . . that required Defendant's father and others to call the police[,]" and the fact that "Defendant's roommates at West Virginia University became so concerned with his behaviors, particularly towards females, that they took it upon themselves to contact law enforcement about him." *Id.* The character testimony presented, merely reinforced the Court's prior assessment. But the new testimony does nothing to undermine the countervailing facts-which remain as they were several months ago. The Court remains concerned "that [defendant] may not have buried his

propensity for violence as deeply as his family [and friends] had hoped." *Id.*

Accordingly, the Court finds that, additional evidence notwithstanding, the Government has proven by clear and convincing evidence, considering the factors set forth in 18 U.S.C. § 3142(g), that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

**II. Due Process**

Normally, a determination that the Government had borne its burden would conclude a detention determination. Under the circumstances of this case, however, there is a further concern. The Eleventh Circuit has recognized "that 'at some point and under some circumstances, the duration of pretrial detention becomes unconstitutional.'" *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990) (quoting *United States v. Gonzalez-Claudio*, 806 F.2d 334, 339 (2d Cir. 1986)). Whether or not the Government has borne its burden under § 3142, statutory considerations cannot override the protections of the Due Process Clause. *See Gonzalez-Claudio*, 806 F.2d at 339-40 ("We have previously expressed the view that in some

circumstances the length of a defendant's pretrial detention might not survive a proper due process challenge." (quotes and cite omitted)).

Although the Eleventh Circuit has made clear in *Quartermaine* that due process imposes *some* upper bound on the length of permissible pretrial detention, it does not specify *what* that upper bound is, nor what specific analysis applies. *See Quartermaine*, 913 F.2d at 918. Moreover, the Eleventh Circuit has never explicitly endorsed a test to evaluate whether any particular detention exceeds the bounds of due process. *Quartermaine*'s favorable citation to the Second Circuit's analysis provides some indication. *See id.* (citing *Gonzales-Claudio*, 806 F.2d at 340). Other districts in this Circuit have also, apparently, taken the citation to the Second Circuit's analysis as significant. *See United States v. Al-Arian*, 280 F. Supp. 2d 1345, 1347 (M.D. Fla. 2003) (citing *United States v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000)). This Court, therefore, adopts the Second Circuit's test as well.

The Second Circuit applies a four-part test to evaluate whether and when pretrial detention becomes unconstitutionally prolonged. Prior to establishing the specific factors for consideration, the Second Circuit explained that "due process places no bright-line limit on the length of

10

pretrial detention." *United States v. Briggs*, 697 F.3d 98, 101 (2d Cir. 2012). Any evaluation of an allegedly unconstitutionally prolonged detention, therefore, must proceed on a case-by-case basis. *Id.* "To determine whether the length of pretrial detention has become unconstitutionally excessive, a court must weigh: (1) its length, (2) the extent of the prosecution's responsibility for delay of the trial, (3) the gravity of the charges, and (4) the strength of the evidence upon which detention was based, *i.e.*, the evidence of risk of flight and dangerousness." *El-Hage*, 213 F.3d at 79.

In this case, three of the four factors are relatively straightforward. First, the Government is responsible for the immediate delay, *i.e.* the trial's continuation, but only in a limited sense. Defendant conceded at the hearing that, although the Government moved for the trial to be continued, the basis for that motion was entirely beyond its control. Other than the continuance, the duration of these proceedings has been fully occupied by vigorous litigation.[3] There is simply no indication that

---

[3] At the hearing, there was some disagreement about the Government's assertion that this case has not progressed more speedily because of defendant's motions practice. The Court does not believe that the Government intended to suggest that defendant did anything improper by vigorously defending against the charges. Any such suggestion would be extremely inappropriate.

11

there has been any "delay." Second, while the charges against Oury are serious, the lack of any alleged violence and the potential penalties indicate that they are not particularly grave. Finally, the strength of proof of Oury's dangerousness, as discussed above, is substantial. The balance of these factors, then, weighs, if only weakly, against a due process violation.

The remaining factor, the length of the delay, is the strongest factor suggesting continued detention might violate due process. Courts have recognized that delays of similar length, at least, raised due process concerns. *See, e.g., United States v. Zannino*, 798 F2d 544, 548 (1st Cir. 1986) ("[W]e shall assume that in many, perhaps most, cases, sixteen months would be found to exceed the due process limitations on the duration of pretrial confinement."). Despite that concern—and given the lack of any other factor strongly indicating a due process violation—"the length of detention alone . . . will rarely by itself offend due process." *El-Hage*, 213 F.3d at 79 (quotes and cites omitted).

Here, the length of detention – which will be approaching thirteen months as of the currently scheduled trial date – is doubtless a concern. Nevertheless, the weight of authority shows that it does not violate due

process. The United States District Court for the District of Columbia has provided a thorough review of cases considering the length of pretrial detention delays in *United States v. Ali*, 965 F. Supp. 2d 139, (D.D.C. 2013). The district court concluded that an approximately twenty-eight-month pretrial detention was strongly indicative of a due process violation. *Id.* at 152. The Court of Appeals, however, disagreed, concluding "the length of appellee's pretrial detention does not violate due process." *United States v. Ali*, 534 F. App'x 1, 2 (D.C. Cir. 2013). A similar sequence occurred between the District Court for the Southern District of New York and the Second Circuit concerning an approximately thirty-month delay. *See United States v. Millan*, 824 F. Supp. 38, 40 (S.D.N.Y. 1993), *reversed* 4 F.3d 1038, 1044 (2nd Cir. 1993) (thirty to thirty-one month period, while factored in defendant's favor, was not dispositive, and noting "[t]his court has upheld projected pretrial detention periods of up to thirty-two months.").

Defendant's pretrial detention has not approached the lengths that both the D.C. and Second Circuits found insufficient to support due-process violations, and it will not if the current trial schedule can be maintained. Several other courts have determined that delays longer

13

than contemplated in this case did not violate due process. *See United States v. Al-Arian*, 280 F. Supp. 2d 1345, 1347 (M.D. Fla. 2003) (anticipated delay of "more than a year, perhaps two," and an additional "six months to a year" for trial, did not preclude detention on due process grounds); *United States v. Barone*, 2010 WL 2366581, at * 2 (S.D.N.Y. June 11, 2010) (sixteen-and-a-half-month detention "regrettably lengthy" but not unconstitutional); *United States v. Brown*, 2008 WL 2064629, at * 4 (D. Vt. May 13, 2008) ("more than twenty-one months" of pretrial detainment not unconstitutional). The duration involved here is simply insufficient, at this time, for the Court to find that it tips the balance.

Accordingly, the Court finds that the duration of defendant's pretrial detention, including the additional period until June 2, 2020, does not violate due process.

## CONCLUSION

In summary, the Court finds that the fact of the COVID-19 pandemic does not, alone, require reconsideration of defendant's pretrial detention. Further, the additional evidence proffered at the April 2, 2020 hearing, while relevant to the detention determination, is largely cumulative of evidence previously considered. Accordingly, to the extent

that defendant sought reconsideration of the prior detention determination, his motion is **DENIED**. Doc. 84. Further, the Court determines that continued pretrial detention, given the scheduled trial date, does not offend due process.

**SO ORDERED**, this 7th day of April, 2020.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA