# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CASE NO.: 4:19-cr-80 |
| LEVI OURY, | |
| Defendant. | |

## O R D E R

This matter comes before the Court on Defendant's Motion for Jurors to be Called from and Trial to be Held in Savannah, (doc. 163), first Motion to Continue, (doc. 165), and second Motion to Continue, (doc. 168). For the reasons stated below, the Court **DENIES** Defendant's Motion for Jurors to be Called from and Trial to be Held in Savannah, (doc. 163), and first Motion to Continue, (doc. 165), but **GRANTS** Defendant's second Motion to Continue, (doc. 168). The jury selection and trial of this case will commence in Statesboro, Georgia, on October 18, 2021, and will be tried before a jury comprised of citizens of the Statesboro Division.

## BACKGROUND

On May 8, 2019, the grand jury in this district indicted Defendant on three counts of interstate stalking in violation of 18 U.S.C. § 2261A(1). (Doc. 1.) The Court has attempted to set this case for trial on several occasions. (See docs. 76, 86, 102.) However, the parties repeatedly and understandably requested that the trial be continued or delayed due to health and safety concerns caused by the COVID-19 pandemic, (docs. 80, 99, 135), and the Court granted those requests, (docs. 83, 102, 109, 135). On June 15, 2021, the Court held a telephonic scheduling conference with counsel. After hearing from counsel regarding the time needed to prepare for trial and counsel's professional calendars, the Court stated that it would hold the pretrial conference in

this case on September 13, 2021, and would commence jury selection and trial on September 20, 2021. Counsel for the United States and Defendant stated that those dates would be convenient for counsel, the parties, and their witnesses.

During the scheduling conference, the Court also advised counsel of a predicament the Court will face regarding courtroom space in the Savannah Division beginning September 1, 2021. On or around that date, the General Services Administration will begin an extensive renovation of the Tomochichi United States Courthouse, which is currently the Court's only facility within Savannah. The project will require the Court to entirely vacate the Tomochichi Courthouse. While plans have been made for the Court to occupy temporary space in Savannah during the renovation project, the General Services Administration has failed to timely prepare that temporary space. Indeed, despite the fact that the Court must vacate the Tomochichi Courthouse in less than two months from today, the construction needed to modify the temporary space to safely house the Court's operations has not yet begun.[1] Thus, the temporary space in Savannah will not be ready for the Court's occupancy for several months after the Court vacates the Tomochichi Courthouse. While the Court has searched for alternative space, there simply is no readily available space in the Savannah Division where the Court could safely conduct a federal criminal jury trial. Thus, for at least several months (and for the first time since the founding of this nation) this Court will not have space in Savannah, Georgia, to conduct a criminal jury trial. This predicament is due to no fault whatsoever of the Court or its employees and obviously causes the Court extreme frustration.

---

[1] The Court may have some space to operate within the United Sates Courthouse Annex which is currently under construction in Savannah. However, that building was only designed and constructed to house the United States Bankruptcy Court and the United States Probation Office. Thus, while the Court may hold some hearings, such as pretrial conferences, in the Annex during its courtroom space predicament, that building is not equipped to conduct a jury trial much less to safely host a federal criminal jury trial.

After explaining this predicament to counsel at the status conference, the Court inquired whether the parties would be willing to have this case tried in the United States Courthouse in Statesboro, Georgia, with a jury pulled from residents of the Statesboro Division. The United States orally agreed to such an arrangement. However, through the current motions, Defendant has indicated that he does not consent to trial in Statesboro. He requests that the trial be held in Savannah or continued until it can be held in Savannah and that, even if the case is tried in Statesboro, that the jury be selected from citizens of the Savannah Division. (Docs. 163, 165.)

On July 7, 2021, Defendant filed his second Motion to Continue, (doc. 168), explaining that lead defense counsel, Marcia Shein, has recently been hospitalized for a severe medical condition and that, therefore, Defendant cannot be prepared to try this case on September 20, 2021. The Court held a hearing on that motion on July 12, 2021. Defendant's counsel Jay Abt appeared at that hearing and updated the Court regarding Ms. Shein's medical condition. Mr. Abt explained that Ms. Shein has conducted the overwhelming majority of the work on behalf of Defendant to this point in the case and that due to her condition, she could not adequately communicate with Mr. Abt regarding the case. Mr. Abt expected that Ms. Shein would be able to communicate with him about the case in approximately sixty days and therefore requested the Court continue the trial for thirty to sixty days from September 20, 2021. The Government stated that it does not oppose Defendant's request.

**DISCUSSION**

**I.**     **Defendant's Request for Trial to be Held in Savannah and First Motion to Continue**

The Sixth Amendment to the United States Constitution guarantees a defendant a speedy and public trial "by an impartial jury of the State and district where the crime was committed." United States v. Betancourt, 734 F.2d 750, 756 (11th Cir. 1984) (quoting United States v.

Anderson, 328 U.S. 699, 704 (1946)). However, "the district" means the judicial district of the United States Courts, and a defendant has no constitutional right to be tried in a particular division. Id.; see also United States v. Merrill, 513 F.3d 1293, 1304 (11th Cir. 2008). "A district court has discretion to fix the place of a trial in any division within the district, and [the United States Court of Appeals for the Eleventh Circuit] review[s] the district court's decision only for abuse of discretion." Merrill, 513 F.3d at 1304. However, the Court's discretion over the location of the trial within the district is not unfettered. Federal Rule of Criminal Procedure 18 requires a district court to "set the place of trial within the district with due regard for the convenience of the defendant, any victim, the witnesses, and the prompt administration of justice."[2]

---

[2] In his Motion for Jurors to be Called from and Trial to be Held in Savannah, (doc. 163), Defendant cites Federal Rule of Criminal Procedure 21 and Platt v. Minn. Mineral & Mfg. Co., 376 U.S. 240, 241 (1964). In Platt, the Supreme Court analyzed the transfer of a case to a different district under a former version of Rule 21(b). 376 U.S. at 241–45. As the Supreme Court explained, at that time, Rule 21(b) directed that, "where it appears that an offense was committed in more than one district or division and the court 'is satisfied that in the interest of justice the proceeding should be transferred' to another such district or division than the one wherein it is filed, the court shall, upon motion, transfer the case." Id. at 241. The Court laid out ten factors that the trial court considered when determining whether "the interest of justice" warranted transfer

> (1) location of corporate defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

Id. at 243–44. Defendant contends that these ten factors should govern the Court's decision in the case at hand. (Doc. 163, p. 2.) However, Rules 18 and 21 were long ago amended to eliminate divisions as units of venue in criminal cases. See United States v. Burns, 662 F.2d 1378, 1381 (11th Cir. 1981); Bostick v. United States, 400 F.2d 449, 452 (5th Cir. 1968). The current version of Rule 21 governs when a court should transfer a case "to another district" "upon the defendant's motion." Fed. R. Crim. P. 21. Of course, this case does not involve a transfer to another district, much less a motion to transfer by Defendant. Thus, Rule 21 has no application to Defendant's Motions. Moreover, while the current version of Rule 21 retains "the interest of justice" as one of the considerations that could warrant transferring a case "to another district," Rule 18 makes no reference to "the interest of justice" when setting the place of trial "within the district." Rather, Rule 18 provides that the trial court must consider "the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." Fed. R. Crim. P. 18. Moreover, the Eleventh Circuit has not made any mention of "the interest of justice" much less the Platt factors when assessing trial courts' intra-district decisions regarding the place of trial. Thus, even if the ten factors

In Burns, the district court tried the case in the Southern Division of the Northern District of Alabama over the defendants' request to be tried in that district's Northeastern Division, the division where the defendants resided and the alleged offenses took place. 662 F.2d at 1380—81. The Eleventh Circuit reversed the defendants' convictions and disapproved of the district court's per se rule of holding all criminal trials in its Southern Division. Id. at 1381—83. The court explained that while a defendant does not have a constitutional right to be tried in a certain division,

> a district judge's exercise of discretion resulting in a trial in an environment alien to the accused over a proper objection must be supported by a demonstration in the record that the judge gave due regard to the factors now incorporated in Rule 18. . . . For speedy trial considerations to outweigh such factors they should be set forth in findings that are sufficiently detailed to allow review.

Id. at 1383.[3] To satisfy this analysis, "[m]ore than incantation of the words 'speedy trial'" is required. Id.; see also United States v. Garza, 593 F.3d 385, 390–91 (5th Cir. 2010) (reversing defendant's convictions where district court transferred case from one division to another for trial without weighing Rule 18 factors) (citing Burns, 662 F.2d at 1383).

On the other hand, in United States v. Pepe, 747 F.2d 632 (11th Cir. 1984), the Eleventh Circuit held that a trial court did not run afoul of Rule 18 when moving a trial from one division

---

enumerated in Platt are relevant under Rule 21, it does not appear those factors have any application to the Court's analysis here. See United States v. Barnes, No. 3:19-CR-0047, 2021 WL 1230485, at *1 n.1 (D.V.I. Mar. 31, 2021) (declining to consider factors from Platt when ruling on request for transfer from one division to another and explaining that Rule 18, not Rule 21, governs such intra-district transfers); but see United States v. Thomas, No. CR 2018-0014, 2019 WL 3307043, at *3 (D.V.I. July 23, 2019) (noting that some courts have applied Platt factors when assessing intra-district transfer). Regardless, even if the Platt factors apply, all of those factors, other than the location of events likely to be involved, either weigh neutrally or in favor of trying this case in Statesboro. The location of defendant, witnesses, counsel, and documents, the docket condition of the two divisions, and the disruption and expense caused by the trial all essentially weigh neutrally when comparing trial in Savannah versus Statesboro. Additionally, while Statesboro is farther from the regional airport than Savannah, the courthouse in Statesboro is easily accessible. This case having already been pending for more than two years and the Court not having a place to safely try this case in Savannah are "special elements" that weigh heavily towards holding trial in Statesboro.

[3] However, the Eleventh Circuit stated that it "see[s] nothing wrong with [the routine setting of all trials in the Southern Division] as long as a defendant does not object." Burns, 662 F.2d at 1383.

to another due to concerns over courtroom space because the trial court had made a clear record of its consideration of the defendants' convenience concerns and found that the "prompt administration of justice" outweighed those concerns. Judge Tjoflat highlighted the district court's findings that courtroom space in Miami was "exceedingly scarce" and that the defendants and their witnesses were not greatly inconvenienced by having to travel to Fort Lauderdale instead of Miami. 747 F.2d at 648. Likewise, in United States v. Merrill, 513 F.3d 1293, 1303–04 (11th Cir. 2008), the Eleventh Circuit upheld the district court's decision to hold a trial in Pensacola rather than Panama City because there was only one courtroom in Panama City and it would not be available for a lengthy jury trial. The Eleventh Circuit emphasized that the trial court had made a clear record of weighing all the Rule 18 factors. 513 F.3d at 1303–04. The court explained that "the prompt administration of justice includes more than the case at bar" and that "matters of security clearly fall within that consideration." Id. at 1304 (quoting In re Chesson, 897 F.2d 156, 159 (5th Cir. 1990) and United States v. Afflerbach, 754 F.2d 866, 869 (10th Cir. 1985), respectively).

In the case at hand, the prompt administration of justice weighs heavily towards trying this case in Statesboro. This Court is facing space constraints even more dire than those faced by the district courts in Pepe and Merrill. While those courts each had only one courtroom in the defendant's preferred division to conduct a jury trial, this Court will soon have no such courtroom in Savannah. Matters of security, which fall within the ambit of the prompt administration of justice, lean heavily towards trying this case in the Statesboro Courthouse as it is the courthouse closest to Savannah that is available to the Court and equipped to safely conduct a federal criminal trial.[4] Moreover, this case has been pending for over two years, and the trial has been repeatedly

---

[4] The Eleventh Circuit in Merrill approvingly noted that "[t]he [trial] court also found that the juvenile justice courthouse in Panama City, suggested by [the defendant] as an alternate location for the trial, was

delayed due to the COVID-19 pandemic. Now that the pandemic has sufficiently abated to the point that the Court can safely resume jury trials, Defendant, the prosecution, the public, the alleged victims, and the Court all have a vested interest in the case being tried without further delay. In addition to the inherent prejudice caused by an even lengthier delay, prolonging the trial would also have practical consequences including the risk of witnesses' memories fading with the passage of time. Further, as detailed above, the lack of courtroom space in Savannah is out of the Court's control, and the Court has no faith that it will be provided suitable space to hold this trial in Savannah in the near future. Thus, while Defendant has alternatively requested that the trial be continued until it can be tried in Savannah, such a continuance would delay the prompt administration of justice indefinitely.

On the other hand, trying this case in Statesboro would only cause minimal inconvenience to Defendant, the alleged victims, and the witnesses. To be sure, some of the events giving rise the charges against Defendant allegedly occurred in the Savannah Division. However, as described in the Court's August 21, 2019 Order, (doc. 44, pp. 2–7), many other relevant events allegedly occurred outside of that division. The United States alleges that, when committing these offenses, Defendant first traveled from his then-home at West Virginia University to the residence of one of the alleged victims in Fort Stewart, Georgia, which is within the Savannah Division. (Id. at p. 6.) Defendant then allegedly drove from Fort Stewart to the residence of the other two alleged victims in Woodstock, Georgia. (Id. at p. 7.) Woodstock is in the Northern District of Georgia, and when traveling there from Fort Stewart, Defendant would have driven through the Statesboro Division of this Court and also through the Middle District of Georgia.

---

not a viable option due to security concerns associated with a federal criminal trial." 513 F.3d at 1304. In this case, Defendant has not suggested an alternative location in Savannah to hold his trial. Nonetheless, the Court has endeavored to find alternative courtroom space in Savannah and has not found any readily available locations that would meet the security requirements necessary for trying this case.

Additionally, Defendant did not reside in Georgia at the time of the alleged offense, and he and his counsel do not currently reside in this District, much less in the Savannah Division. While one of the alleged victims previously resided in the Savannah Division, neither that victim nor the other two alleged victims currently reside in this District. Additionally, during prior hearings, the attorneys explained that many of the witnesses will be travelling from out of state and some from out of the country. Thus, for Defendant, his counsel, many of the witnesses, and the victims, Statesboro would be an environment no more alien than Savannah.

Recognizing that the trial participants do not actually reside in the Savannah Division, Defendant contends "[t]he access to the airport for the Defendant and his family as well as counsel, and witnesses, makes the request to keep the trial in Savannah reasonable." (Doc. 163, p. 2.) However, the time and distance from the Savannah-Hilton Head International Airport to the Statesboro Courthouse is not substantially greater than the distance from that airport to downtown Savannah.[5] It takes roughly thirty minutes to travel approximately fifteen miles from the Savannah-Hilton Head International Airport to downtown Savannah, and it takes roughly an hour to travel approximately sixty miles from the airport to the Statesboro Courthouse. Further, while parking within downtown Savannah is notoriously difficult to find, the Statesboro Courthouse has ample adjacent parking. Moreover, to the extent that Defendant's counsel and the two alleged victims who reside in Woodstock, Georgia, travel to the trial by car, the Statesboro Courthouse is closer to Defendant's counsel's office and the two victims' residence than downtown Savannah. Thus, trying this case in Statesboro as opposed to Savannah will not be appreciably less convenient for Defendant, the alleged victims, or any witnesses. Defendant claims "it is clear that the expense

---

[5] The Court is well familiar with the facts in this paragraph and takes judicial notice of them as they are "generally known within the trial court's territorial jurisdiction" and they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

to all parties and jurors would be greater in Statesboro." (Id. at p. 2.) However, he does not offer any support for this assertion. Statesboro provides ample lodging and dining options for parties, witnesses, and attorneys who travel from out of town, and those options are generally less expensive than those available in downtown Savannah.[6]

For all these reasons, the Court finds that the prompt administration of justice compels the Court to try this case in Statesboro, and that interest far outweighs the minimal inconvenience that will be caused to Defendant, his counsel, the alleged victims, and the witnesses. Thus, the Court **DENIES** Defendant's request to keep this trial in Savannah. Moreover, given the time that this case has already been pending, and the uncertainty surrounding available courtroom space in Savannah, the Court **DENIES** Defendant's request for a continuance until the case can be tried in Savannah.

## II. Defendant's Request that the Jury Be Selected from the Savannah Division

Having determined that this case will be tried in Statesboro in September, the Court next addresses Defendant's request that the jury panel be drawn from citizens of the Savannah Division. (Doc. 163.) Regarding the geographical parameters of the community from which a jury is selected, the Sixth Amendment's vicinage provision provides that criminal defendants are entitled to trial "by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." U.S. Const. amend. VI. In United States v. Grisham, 63 F.3d 1074, 1078–81(11th Cir. 1995), the Eleventh Circuit rejected a

---

[6] To paraphrase a late Judge of this District who would no doubt share the Court's frustration at its courtroom space predicament, but who would also relish the opportunity to try a case in Statesboro: "Autumn in [Statesboro] is a wonderful time of the year, when cooling breezes calm the nerves and energize legal talent. Traffic and airport congestion virtually never exist in [Statesboro], in contrast to [Savannah]. [Statesboro's] lodging accommodations will amply please lawyers and litigants alike. And all shall no doubt enjoy [Statesboro's] legendary hospitality." United States v. Bradley, No. 405CR059, 2005 WL 8153005, at *4 (S.D. Ga. June 16, 2005) (Edenfield, J.).

9

defendant's argument that district courts are required to select potential jurors only from the division in which the crime allegedly took place. The court explained that the Sixth Amendment gives Congress the power to define the parameters of vicinage, and that Congress, in turn, did not require potential jurors to be selected from the division where the crime occurred. Grisham, 63 F.3d at 1078–81. The Eleventh Circuit held that in both the Jury Selection and Service Act, 28 U.S.C.A. § 1861, *et seq.*, as well as the statutes creating judicial divisions, Congress "did not exercise its power to define the geographical limits from which a federal jury may be drawn." Id. at 1081; see also United States v. Baker, 98 F.3d 330, 337 (8th Cir. 1996) (district court did not err by refusing defendants' request for trial in, or for a jury drawn from, the division where the offense occurred because there "is no statutory or constitutional right to a jury drawn either from the entire judicial district or from the division in which the offense occurred"); United States v. Balistrieri, 778 F.2d 1226, 1229 (10th Cir. 1985) (upholding district court order that jury be drawn from Green Bay Division of the Eastern District of Wisconsin even though alleged crime occurred in Milwaukee, trial was held in Milwaukee Division, and Green Bay was more rural than Milwaukee, and noting that "the jury is not required to be selected either from the entire district or from the division in which the crime was committed").

In accordance with the Jury Selection and Service Act, this Court has implemented a Plan for the Random Selection of Grand and Petit Jurors (the "Jury Selection Plan" or the "Plan"). The Jury Selection Plan establishes six Jury Management Divisions (Augusta, Brunswick, Dublin, Savannah, Waycross, and Statesboro), and provides that "[j]urors will be selected for service from a single division for petit jurors, from all divisions (pro rata) for grand juries, or from any combination of divisions as the Chief Judge may direct from time to time." (Plan, pp. 5–6.) The Jury Selection Plan also provides for a district-wide petit jury when deemed "appropriate and

10

necessary." (Id. at p. 6.) The Plan prescribes procedures for the creation of a Qualified Jury Wheel ("QJW") for each division, (id. at pp. 8–11), and the random selection of individuals from the QJW to form grand jury and petit jury panels, (id. at pp. 11–13).

In the case at hand, Defendant has not argued that the Court must select jurors from the Savannah Division, much less cited any constitutional provision, statute, rule, or portion of the Jury Selection Plan that requires the Court to do so. Rather, he has only vaguely stated that a jury pool from the Savannah Division would be "more likely to represent a jury of the Defendant's peers than [one from] Statesboro" and that there "needs to be a broader selection opportunity than Statesboro will provide in light of the offenses charged and where the offenses allegedly occurred."[7] (Doc. 163, p. 1.) Defendant has failed to offer any supporting explanation much less facts to buttress these conclusions. The Court sees no inherent disadvantage to Defendant if a jury panel is selected from the Statesboro Division QJW. It does not appear that this case has received any media coverage to date (nor does it seem likely to attract media attention when trial commences), thus there is no concern that any media coverage was or will be heavier in Statesboro than in Savannah (so as to result in a greater likelihood of bias amongst potential jurors in Statesboro). While the nature of the charges against Defendant could elicit emotions from potential jurors, there is no reason to believe that members of the Statesboro Division QJW would be any more likely to feel such emotions than members of the Savannah Division QJW. Further,

---

[7] "Challenges to the jury selection process may be based on the fair cross-section requirement of the Sixth Amendment, the equal protection component of the Fifth Amendment, or a substantial failure to comply with the provisions of the [Jury Selection and Service Act]." Grisham, 63 F.3d at 1077 (internal citations omitted). Defendant has not made any argument that selecting the jury panel from the Statesboro Division QJW for his trial would violate any constitutional or statutory provision. He has only made the opaque statements quoted above. To the extent that Defendant intended to raise a Sixth Amendment claim through these statements, he has not set forth a prima facie case. See United States v. Davis, 854 F.3d 1276, 1295 (11th Cir. 2017). Additionally, Defendant has not followed the procedures for challenging compliance with jury selection procedures, which are set forth at 28 U.S.C. § 1867.

Defendant will have the opportunity to ferret out any prejudice that a prospective juror may harbor through the voir dire process. Though Defendant also opaquely references "where the offenses allegedly occurred," the Eleventh Circuit has noted that "[i]mpartiality may, in fact, be better served by juries drawn from areas not in close proximity to the crime." Grisham, 63 F.3d at 1080. Moreover, only a portion of Defendant's offenses allegedly occurred in the Savannah Division, and Defendant is alleged to have traveled from out of state, throughout this District (including within the Statesboro Division), and within the Middle and Northern Districts of Georgia while committing the alleged offenses. There is simply nothing about this case that would cause the Court to believe that citizens of the Statesboro Division would be prejudiced against Defendant or that the parties will otherwise be unable to select a fair and impartial jury from a panel selected from the Statesboro Division QJW.[8]

On the other hand, it would more convenient for citizens of the Statesboro Division to attend what could be a lengthy trial in Statesboro than citizens of the Savannah Division. Members of the Savannah Division QJW by and large would have to travel farther to reach the Statesboro Courthouse each day than would members of the Statesboro Division QJW. Further, given this travel distance, if the jury were selected from the Savannah Division, the Court may have to open court later and conclude earlier each day to afford the jurors time to travel to and from the Statesboro Courthouse, thus needlessly prolonging the trial of this case.

---

[8] Because the Court decides that there is no reason that the Court *should* draw the jury panel from the Savannah Division QJW for a trial to be held in Statesboro, the Court need not delve into whether it *could* do so. The Court has reviewed its Jury Selectin Plan and sees nothing in the Plan that expressly prohibits the Court from requiring citizens of one division to serve as jurors in another division. Cf. United States v. Rodella, No. CR 14-2783 JB, 2014 WL 4792598, at *9 (D.N.M. Sept. 15, 2014) (rejecting defendant's request to draw jurors from two divisions or entire district because that district's jury selection plan required court to draw jury from division in which trial is held).

For all these reasons, the Court **DENIES** Defendant's request to have the jury panel selected from citizens of the Savannah Division.

III. **Defendant's Second Motion to Continue**

As stated at the July 12, 2021 hearing, the Court is sympathetic to Ms. Shein's medical condition, and extends its best wishes to her for a speedy and full recovery. However, particularly given the length of time that this case has been pending, and the interests of the public, the alleged victims, and the Defendant in the speedy trial of this case, the Court cannot continue this matter indefinitely. Additionally, this case is not set to go to trial for several weeks, and Mr. Abt would ordinarily have more than sufficient time to prepare to represent Defendant at trial. As the Court explained at the hearing, attorneys serving as co-counsel are often required to take over as lead counsel on the eve of or even during trial. However, the Court is sensitive to the reality that Ms. Shein has primarily represented Defendant to this point and has conducted a great deal of work necessary to prepare for trial. Given Ms. Shein's medical condition, Mr. Abt would not be able to meaningfully communicate with Ms. Shein prior to trial on September 20, 2021, and, therefore, would not have the benefit of her efforts. Additionally, pursuant to the Court's Criminal Trial Management Order, the Court will impose deadlines for pretrial filings including proposed voir dire and requests for jury instructions weeks in advance of trial. Thus, the interest of justice warrants a brief continuance of this trial until October 18, 2021. The need to provide Defendant's counsel adequate time to prepare for trial substantially outweighs the interests of the Defendant, the alleged victims, and the public in a speedy trial from now until the trial of this case. However, Defendant is forewarned that absent any unforeseen and extraordinary circumstances there will be no further continuances, and Mr. Abt should be prepared to serve as lead counsel at trial.

## CONCLUSION

For the above stated reasons, the Court **DENIES** Defendant's Motion for Jurors to be Called from and Trial to be Held in Savannah, (doc. 163), and first Motion to Continue, (doc. 165). To be clear, this Order does not announce a per se rule for the trial of Savannah Division cases during the upcoming period when the Court will have limited or no courtroom space in the Savannah Division. The facts of some cases may warrant continuing the trial until it can be held in Savannah or selecting the jury panel from the Savannah QJW. However, on the specific facts of this case, the Court finds that the prompt administration of justice outweighs any inconvenience and compels the Court to try this case in Statesboro with a jury selected from the citizens of the Statesboro Division. Additionally, for the reasons stated herein, the Court **GRANTS** Defendant's second Motion to Continue, (doc. 168).

**SO ORDERED**, this 13th day of July, 2021.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA