# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR419-080 |
| | ) | |
| LEVI JOSEPH OURY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant Levi Joseph Oury is charged with three counts of interstate stalking in violation of 18 U.S.C. § 2261A(1).  *See* doc. 3 (Indictment).  A pretrial conference in this case is currently scheduled for October 12, 2021, and trial is set to commence on October 18, 2021.  Doc. 171.  Currently before the Court is Oury's Motion *in Limine*, seeking to exclude from trial certain categories of evidence.  *See* doc. 144.  The Government opposes.  *See* doc. 157.

## I.   BACKGROUND

The Court has previously summarized the general background of this prosecution:

> The indictment alleges that from March 10, 2019 to March 15, 2019, Defendant traveled from West Virginia to Georgia with

the intent to harass and intimidate, and with the intent to place under surveillance with intent to harass and intimidate, an individual identified as K.M.J. as well as her mother and father. ([Doc. 3] at 1-3.) After investigating Defendant, the Government received information detailing Defendant's years-long history of harassing K.M.J. and her family in person and via various electronic devices, as well as making threatening communications to various other individuals who have a connection to K.M.J. (See, e.g., doc. 58-1.) Likewise, Defendant had traveled on more than one occasion to locations where the victim worked or resided. (Id.)

Doc. 75 at 1-2.

Defendant's brief explains further that, prior to the indicted conduct, he and K.M.J. attended Wheaton College in Illinois. *See* doc. 144 at 1-2. While at Wheaton, K.M.J. filed a complaint about defendant's behavior and the college issued a Title IX no-contact order. *Id.* at 2. She also sought and obtained a no-contact order in a state court in DuPage County, Illinois, where Wheaton is located. *Id.* Ultimately, defendant withdrew from Wheaton College. *Id.* After his withdrawal, he concedes that K.M.J. reported communications he had with third parties about her to Wheaton police. *Id.* He contends that police "would not take further action," on K.M.J.'s report. *Id.*

After defendant's withdrawal from Wheaton, K.M.J. and her parents encountered defendant at an ROTC event in Fort Knox,

Kentucky in 2017.  Doc. 144 at 2.  Defendant suggests that he "left the area after making eye contact with K.M.J.'s parents.  He did not have contact with K.M.J. and her parents chased [him] with no provocation from him."  *Id.*; *but see* doc. 44 at 4 (indicating that defendant used profane language and gestures towards K.M.J.'s parents).  Also in 2017, defendant was escorted out of an ROTC event in Camp Dodge, Iowa.  Doc. 144 at 2.  Although K.M.J. was in attendance, he had no direct contact with her.  *Id.*  That same year, K.M.J.'s family reported to the FBI that defendant appeared to be following their online activities.  *Id.* at 3.  The FBI opened its investigation into defendant's activities in late 2017.  *Id.*

In early 2018, defendant began attending West Virginia University ("WVU").  Doc. 144 at 3.  K.M.J. graduated from Wheaton in May of that year and was posted as an active-duty officer to Ft. Stewart, Georgia.  *Id.*  During this time, defendant continued to communicate—his brief states obliquely that he "inquired about and made remarks concerning K.M.J."—with mutual acquaintances about K.M.J.  *Id.*

As discussed above, in March 2019, defendant traveled to Georgia.  *See* doc. 144 at 3.  He first traveled to Fort Stewart, where he was given a pass to enter the base under his own name.  *Id.*  He subsequently

traveled to Cherokee County, to the neighborhood where K.M.J.'s parents reside. *Id.* He then returned to West Virginia. *Id.* at 4. He continued to communicate with third parties about K.M.J. *Id.* FBI agents arrested him at his apartment in West Virginia in May 2019. *Id.*

Defendant filed his motion *in limine* asking the Court to prohibit the Government from introducing at trial: (1) all evidence arising out of K.M.J.'s complaint to Wheaton College, the Wheaton College Title IX investigation, the ultimate ruling by that institution, and any witness testimony referring to the investigation, doc. 144 at 5-8, 11; (2) the fact that K.M.J. filed a civil complaint in the Circuit Court of DuPage County, Illinois, the testimony from that proceeding, that Court's rulings, and any witness testimony referring to these proceedings, *id.* at 8-10; (3) witness testimony that might offer an opinion about defendant's future behavior, *id.* at 12; (4) references to "Eugene Savonek," *id.* at 12-15; (5) statements from defendant's West Virginia University roommates, *id.* at 15-16; (6) videos from defendant's cell phone, *id.* at 17-19; (7) the Government's proposed expert witness, *id.* at 19-23; and (8) defendant's computer search history, *id.* at 24-25.

## II.   DISCUSSION

"The Court will grant a motion *in limine* to exclude evidence only if the evidence in question is clearly inadmissible.  The moving party has the burden of proving that the evidence sought to be excluded is inadmissible."  *Wilson v. Pepsi Bottling Grp., Inc.*, 609 F. Supp. 2d 1350, 1359 (N.D. Ga. 2009) (internal cites omitted).  With this standard in mind, the Court now addresses each challenged category of evidence in turn.

### A.   Wheaton College Title IX Proceedings and Illinois State Court Proceedings

Defendant seeks to preclude the Government's introduction of evidence or solicitation of testimony concerning the Title IX investigation conducted by Wheaton College and the state-court proceedings in DuPage County, Illinois, where K.M.J. sought and obtained a stalking no-contact order against the defendant.  Doc. 144 at 5, 8, 11.  He argues that evidence related to the college's investigation is not admissible under Federal Rule of Evidence 404(b) "as nothing that occurred at Wheaton was a criminal act or related to the charges filed in this case." *Id.* at 6.  He also argues that the Title IX investigation, and the events it focused on, are too remote in time to the indicted conduct to be admitted

under Rule 404(b).  *Id.* at 6, 8.  Finally, he argues that the evidence should be excluded under Rule 403 as any probative value of the evidence is substantially outweighed by the risk of undue prejudice.  *Id.*

As to the DuPage County proceedings, defendant argues that the information would be "more prejudicial than probative" because the no-contact order "was issued without due process" for the defendant, because the state court civil proceedings were subject to a reduced burden of proof, and because the victim failed to appear for a hearing in those proceedings.  Doc. 144 at 9.

The Government responds that evidence related to the Wheaton College investigation and the DuPage County proceedings is admissible either as intrinsic evidence inextricably intertwined with the evidence regarding the charged offense, doc. 157 at 3, or as extrinsic evidence admissible under Rule 404(b) as demonstrating motive, intent, knowledge, and absence of mistake or accident, *id.* at 6-7.  Moreover, the Government contends that the probative value of the evidence outweighs any prejudice to the defendant. *Id.* at 13-14.

"Uncharged crimes, wrongs, or acts may be admissible either as intrinsic or extrinsic evidence, provided evidence of the conduct meets

certain criteria." *United States v. White*, 848 F. App'x 830, 839–40 (11th

Cir. 2021).   As the Eleventh Circuit has explained regarding intrinsic

evidence:

> Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

*United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998).  This type

of intrinsic evidence falls outside the scope of Rule 404(b) and is

admissible if it is (1) an uncharged offense which arose out of the same

transaction or series of transactions as the charged offense; (2) necessary

to complete the story of the crime, or (3) inextricably intertwined with

the evidence regarding the charged offense.  *United States v. Troya*, 733

F.3d 1125, 1131 (11th Cir. 2013).  "Evidence is inextricably intertwined

if it is an 'integral and natural part of the witness's accounts of the

circumstances surrounding the offenses for which the defendant was

indicted.'"  *Id.* (quoting *United States v. Foster*, 889 F.2d 1049, 1053 (11th

Cir. 1989)).

Conversely, extrinsic evidence of "any other crime, wrong, or act is

not admissible to prove a person's character in order to show that on a

particular occasion the person acted in accordance with the character."
Fed. R. Evid. 404(b). It may, however, be admissible for other purposes,
"such as proving motive, opportunity, intent, preparation, plan,
knowledge, identity, absence of mistake, or lack of accident." *Id.* "The
rule permits the introduction of evidence of a prior or uncharged act if
the government can demonstrate: (1) a proper purpose for introducing
the evidence; (2) that the prior act occurred, and that the defendant was
the actor; and (3) that the probative value of introducing the evidence
outweighs any prejudicial effect the evidence might have." *United States
v. Cancelliere*, 69 F.3d 1116, 1124 (11th Cir. 1995) (citing *United States
v. Perez–Garcia*, 904 F.2d 1534, 1544 (11th Cir.1990)). This framework
governs regardless of whether the prior activity might give rise to
criminal liability. *United States v. Delgado*, 56 F.3d 1357, 1365 (11th Cir.
1995).

The third prong of the Rule 404(b) analysis encapsulates Rule 403's
balancing test. *See* Fed. R. Evid. 403 ("The court may exclude relevant
evidence if its probative value is substantially outweighed by a danger of
. . . unfair prejudice . . . ."). "All admissible evidence, whether intrinsic
or extrinsic, must be weighed against Rule 403 prejudice." *Troya*, 733

F.3d at 1131.  Exclusion under Rule 403 is an extraordinary remedy, and where the evidence is central to the prosecution's case, it should not lightly be excluded.  *Id.* at 1131-1132.  "[T]he balance should be struck in favor of admissibility."  *Id.* at 1132.

Defendant has been charged with three counts of interstate stalking against K.M.J., K.M.J.'s mother, and K.M.J.'s father.  Doc. 3.  At trial, the Government must prove that the defendant:

> traveled in interstate commerce from the State of West Virginia to the State of Georgia with the intent to harass and intimidate, and with the intent to place under surveillance with intent to harass and intimidate . . . K.M.J., [K.M.J.'s mother, and K.M.J.'s father], and in the course of, and as a result of, such travel engaged in conduct that caused, and would be reasonably expected to cause, substantial emotional distress to K.M.J. [and K.M.J.'s immediate family members, namely her mother and father].

*Id.*; *see also* 18 U.S.C. § 2261A(1).  As the Court has already observed, the Government's burden includes both that the defendant acted with intent, and that the victims' fear or emotional distress was objectively reasonable.  Doc. 65 at 9, *adopted* doc. 75.

Evidence related to the Wheaton College Title IX investigation and the state-court proceedings, including K.M.J.'s complaints about defendant's conduct that launched the two parallel proceedings, provides

important context for the charged conduct and is therefore appropriately categorized as intrinsic evidence. Defendant's course of behavior towards K.M.J. began while the two were classmates at Wheaton College and continued after he left that campus, up through the conduct forming the basis for the charges here. The defendant and K.M.J.'s past interactions, including her initial complaints about his behavior and her requests that he not be permitted to contact her, are necessary for the Government to be able tell the full story of the interactions between the two, including how and when the defendant's behavior began. *See United States v. Leichtman*, 742 F.2d 598, 604 (11th Cir. 1984) (evidence of prior drug transaction was not evidence of an extrinsic offense where it was necessary to complete the story of the charged kidnapping); *White*, 848 F. App'x at 841 (evidence appropriately admitted over objection where it is necessary to complete the story of the crime); *United States v. Parnell*, 32 F. Supp. 3d 1300, 1307 (N.D. Ga. 2014) (evidence of salmonella outbreak was admissible as important context to the charged offenses, providing background as to how and why government agencies began the investigation that led to the defendants, and without it the jury would be invited to speculate about the background to the prosecution).

Additionally, this evidence is inextricably intertwined with the indicted conduct. The Government has indicated that it will call K.M.J. as a witness at trial. *See* doc. 157 at 12. How the two met, how the defendant behaved towards her from that initial meeting, and how she sought the college's and the court's intercession concerning that behavior, are integral and natural parts of her account of the circumstances surrounding the offenses for which the defendant was indicted. *Foster*, 889 F.2d at 1053. Not only will her anticipated testimony provide important context, but it will also allow the jury to appropriately evaluate whether her response to the charged behavior was objectively reasonable. *McLean*, 138 F.3d at 1404 (evidence of defendant's past interactions with known drug organization appropriately admitted where it was vital to an understanding of the context of the government's case against the defendant, and was therefore inextricably intertwined with the government's proof of the charged offenses).

Even if the evidence related to the Wheaton College investigation and the state-court proceedings did not qualify as intrinsic, it is still admissible as extrinsic evidence under Rule 404(b). The Government argues that the evidence related to the Wheaton College investigation

and the Illinois state-court proceedings demonstrate intent, knowledge, and absence of mistake or accident, which are proper purposes under Rule 404(b).  Doc. 157 at 9.

Defendant, by pleading not guilty, has made his intent a material issue, "imposing a substantial burden on the government . . . the government may meet this burden with qualifying 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue." *Delgado*, 56 F.3d at 1365.  "Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses.  [Cite]. Thus, where the state of mind required for the charged and extrinsic offenses is the same, the first prong of the Rule 404(b) test is satisfied." *United States v. Edouard*, 485 F.3d 1324, 1345 (11th Cir. 2007) (internal cites omitted).  Like the defendant in *Delgado*, who presented a "mere presence" defense to drug related charges, 56 F.3d at 1365, the defendant here has presented argument during these proceedings that there is an innocent explanation behind his interactions with and about K.M.J. and his presence in Georgia, *see, e.g.,* doc. 44 at 11-12; doc. 105 at 15-21.  In both the Wheaton College investigation and the state court proceedings,

his behavior towards K.M.J. and her objections to that behavior were at issue; similarly, here, the Government must prove his intent to harass or intimidate K.M.J., or the intent to place her under surveillance with the intent to harass and intimidate her.  *See* doc. 3.  His behavior towards K.M.J. while at Wheaton College, including the proceedings whereby she sought to stop that behavior, is relevant to his intent towards K.M.J. in the charged offenses.  *See United States v. Montes-Cardenas*, 746 F.2d 771, 780 (11th Cir. 1984) (testimony that defendant imported cocaine in the past was relevant to his intent in cocaine importation prosecution); *United States v. Barrington*, 648 F.3d 1178, 1186-87 (11th Cir. 2011) (prior acts of forging grade-changing document was relevant to prove intent in conspiracy and fraud prosecution involving forged grades).

The Court is also persuaded by the Government's argument that the evidence is properly admitted for purposes of showing the defendant's knowledge.  The prior proceedings, in which K.M.J. complained about the defendant's unwanted contact ultimately resulting in a no-contact order and defendant withdrawing from college, are probative that the defendant had knowledge that his conduct caused K.M.J. distress.  It might also be relevant to contradict the defendant's expected argument

13

that his behavior was innocent, or simply misunderstood. *See United States v. Floyd*, 522 F. App'x 463, 466-467 (11th Cir. 2013) (evidence of prior drug conviction properly admitted where defendant contested his knowledge of the characteristics of the substance found in his possession and asserted a mere presence defense).

For the Court to properly admit this evidence, the Government must prove that the prior acts occurred, and that the defendant was the actor. *Cancelliere*, 69 F.3d at 1124. "In deciding whether the prosecution has introduced sufficient evidence to make its showing that the defendant engaged in the prior act, the trial court need not make a finding to that effect, but instead it 'simply examines all the evidence in the case and decides whether the jury could reasonably find the . . .fact [at issue] by a preponderance of the evidence.'" *United States v. Green*, 873 F.3d 846, 858, n. 9 (quoting *Huddleston v. United States*, 485 U.S. 681, 690 (1988)).

While defendant does not appear to challenge that his behavior was investigated by Wheaton College, or that K.M.J. sought a no-contact order because of it, he argues that the two proceedings were civil matters, carrying lower burdens of proof, and that he was not afforded due process

14

in the state court proceedings.  *See* doc. 144 at 9.  The law does not require past acts to be criminal charges that carry a particular burden of proof. *See* Rule 404(b) ("Evidence of any other crime, *wrong, or act . . .*"); *Foster*, 889 F.2d at 1054 (testimony of witness about defendant's prior drug smuggling was properly admitted, where there was no "other evidence of a conviction for a prior criminal act," and the conduct was not "established by a jury's finding of guilt beyond a reasonable doubt or a guilty plea by the defendant.").  The Government states its intent to call K.M.J. and others who it expects will testify about the defendant's prior acts, including the conduct leading to Wheaton College's investigation and the state court's no-contact order, and has also suggested that it will offer documentary evidence to demonstrate that the prior acts occurred, and that the defendant was the actor.  Doc. 157 at 13.  That is sufficient, at this point, to overcome the defendant's *in limine* challenge.  *See United States v. Beechum*, 582 F.2d 898, 913-914 (5th Cir. 1978)[1] (government need only provide sufficient evidence for the jury to find that the defendant in fact committed the extrinsic offense).

---

[1] The Eleventh Circuit has adopted all decisions of the former Fifth Circuit decided prior to the close of business on September 30, 1981 as binding precedent. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981)

The evidence related to the Wheaton College investigation is admissible, both as intrinsic and extrinsic evidence; however, that is not the end of the analysis. The Court must also conduct a Rule 403 balancing test. That Rule provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. As the Eleventh Circuit has noted, "Rule 403 is an extraordinary remedy that must be used sparingly because it results in the exclusion of concededly probative evidence." *United States v. McNair*, 605 F.3d 1152, 1206 (11th Cir. 2010). Moreover, "in cases where [the Eleventh Circuit] has found other acts evidence inextricably intertwined with the crimes charged, the Court has refused to find that the evidence should nonetheless be excluded as unduly prejudicial. [Cite]. The test under Rule 403 is whether the other acts evidence was dragged in by the heels solely for prejudicial impact." *Id.* (internal cites and punctuation omitted).

Here, the Wheaton College and DuPage County proceedings are inextricably intertwined with the charged crimes and are not being

introduced solely for prejudicial impact.  Moreover, the defendant's prior conduct, as evidenced by these two proceedings initiated by K.M.J.'s complaints, are probative of the defendant's intent to harass and intimidate K.M.J. and his knowledge of K.M.J.'s distress at his unwanted contacts.  Defendant argues that the evidence should be excluded as unduly prejudicial, in part because the prior proceedings are too remote in time to the charged conduct.  However, "given the high degree of similarity between [the prior acts and the charged conduct], the temporal separation of the two does not significantly depreciate the probative value of the [prior proceedings]." *United States v. Ellisor*, 522 F.3d 1255, 1268 (11th Cir. 2008).  The probative value of the evidence is not substantially outweighed by any unfair prejudice to the defendant.  His motion *in limine* to exclude this evidence is **DENIED, in part.**

### B.    Opinions on Future Behavior

Defendant states that the Government's discovery includes "certain statements by witnesses that include predictions of future behavior by various individuals," including defendant.  *See* doc. 144 at 12.  He requests that "[a]ll such predictions and opinions . . . be excluded." *Id.* The Government responds that the objection to "certain statements" is

simply too vague to support a motion *in limine*.  *See* doc. 157 at 22.  The Government is correct.  Defendant's request is simply too vague to support exclusion of any evidence.  *See Atwater v. Schwartz,* 2020 WL 7249626, at *5 (S.D. Ga. Dec. 9, 2020) (denying motion in limine as premature, where Court could not say definitively that evidence was inadmissible on all potential grounds, since parties were ambiguous as to what statement was at issue).  Accordingly, it is **DENIED, in part**.

## C.    References to "Eugene Savonek"

The Government has provided to the defendant statements by witnesses who claim that the defendant compared himself to Eugene Savonek, a former Wheaton College student who later stabbed and killed his pregnant wife.  Doc. 144 at 12.  While Savonek and his wife were at the College, he was subject to a no-contact order similar to the one K.M.J. obtained against the defendant.  *Id.* at 12-13.  Savonek pled guilty to the murder in February 2017, and the defendant allegedly compared himself to Savonek in the fall of 2017, after the guilty plea.  *Id.* at 13.  The defendant argues that his comments about Savonek should be excluded

under Fed. R. Evid. 403, as any remote relevance is outweighed by the undue prejudice of these statements. *Id.* at 14.

Though the government does not individually address the Eugene Savonek comparison, it instead argues that those comments, along with the Title IX investigation and the DuPage County no-contact proceedings, are inextricably intertwined with the offenses charged in the indictment, and, alternatively, they demonstrate motive, intent, knowledge, and absence of mistake or accident. *See* doc. 157 at 2, 6-7.

The defendant's own self-comparison to Savonek, a short time after Savonek's guilty plea to a murder charge, where both the defendant and Savonek had restraining orders while at Wheaton College, is relevant to the defendant's motive and state of mind leading up to the charged behavior. At this point the Court cannot anticipate how the Government might attempt to introduce these statements at trial. It is also not clear if the Government's witness will offer any testimony as to what he may have communicated to K.M.J. about these comments. Therefore, the Court cannot say, at this time, that the self-inflicted prejudice substantially outweighs the probative value of the statements. *See* Fed. R. Evid. 403. To the extent the defendant wishes to offer alternative

explanations for the comparison, *see* doc. 144 at 13, he is free to do so. The motion *in limine* as to the defendant's statements about Eugene Savonek is, therefore, **DENIED, in part.** *See Atwater*, 2020 WL 7249626 at *5 ("[T]he Court should deny a motion in limine if it cannot fully determine whether the evidence should be excluded prior to trial.").

### D.    Statements from WVU Students

During its investigation of defendant, the FBI interviewed his roommates at WVU. *See* doc. 144 at 15-16.  The roommates reported that defendant would stare at female visitors, scream on the phone to his mother, scream while alone in his room, and lock his door every time he left. *Id.* Defendant asks the Court to prohibit the Government from using these statements, arguing they are irrelevant, speculative, and improperly prejudicial, and are only being used to "paint Defendant as unusual, weird or odd." *Id.* at 16.

The Government responds by saying that it doesn't intend, "at this time," to present this testimony.  Doc. 157 at 20.  The Government hedges by offering to "immediately inform defense counsel" should it ultimately decide to do so. *Id.* at 20-21.  It does not offer any theory of admissibility as to the challenged statements. *See id.*  Since the Government has not

fully committed to withholding these statements from trial, and because the defendant has challenged their admissibility, the Court considers the defendant's arguments for exclusion.

The statements made by defendant's roommates to the FBI are general observations about his behaviors and conduct while attending WVU, after he left Wheaton College.  Doc. 144 at 15.  The roommates do not appear to have any direct knowledge of defendant's interactions with K.M.J., nor do they appear to personally know K.M.J.  These statements are therefore irrelevant to defendant's conduct as it relates to K.M.J. and constitute improper character evidence.  *See* Fed. R. Evid. 401, 404(a).  Moreover, any slight probative value is substantially outweighed by the risk of unfair prejudice to the defendant.  Fed. R. Evid. 403.  Therefore, defendant's motion *in limine* as to the WVU roommates' statements to the FBI is **GRANTED, in part**.

### E.   Cell Phone Videos

Defendant next seeks to exclude five videos found on a cell phone seized from the defendant's apartment.  Doc. 144 at 17.  According to the Defendant, these videos are all date stamped December 3, 2015, and appear to depict the defendant looking into the camera making certain

inflammatory statements. *Id.* The victim is never mentioned or identified. *Id.* at 17-18. The defendant asserts that these videos were never transmitted to anyone, which the Government does not contest. *Compare id.* at 18 *with* doc. 157 at 5-6. In the defendant's view, these are "self-expressions of anger and doubt, not directed at or shared with anyone else or anyone specific." *Id.* Any speculation that the defendant was referring to the victim is based solely on the timing of the videos, which was contemporaneous with the Wheaton College investigation and the state-court no-contact proceedings. Doc. 157 at 5-6. The Government invites the Court to speculate in that very way and admit the evidence as illustrating the defendant's state of mind and his motive to continue harassing K.M.J. *Id.* The Court will not do so. Any probative value from these "selfie" videos, which were apparently not disseminated to any recipient, is *de minimis* compared to the risk of undue prejudice if the jury were to see these private musings. The defendant's motion *in limine* as to the five cell phone videos is, therefore, **GRANTED, in part**.

> F.   **Government's Expert Witness Testimony**

The Government intends to call FBI agent Karie A. Gibson, Psy.D., as an expert witness who is "expected to testify regarding offender

behaviors and modus operandi related to targeted criminal acts, including stalking." Doc. 139 at 4.  This testimony, it argues, "will assist the jury by providing a framework within which to conceptualize the interactions of Defendant and K.M.J.; and will assist the jury in its own analysis of the Defendant's behaviors in this case." Doc. 157 at 18.

The defendant argues that the proposed expert should be excluded because she has not personally evaluated the defendant, because her prior military service may bias her towards the alleged victim, and because her opinion is founded upon a text that "identifies multiple reasons why she cannot testify in the Defendant[']s case." Doc. 144 a 19-20.  The witness's own text, the defendant argues, points out that threat assessments are investigative and operational tools, and not evidence of violence risk or criminal wrongdoing, and are not suitable for use as the basis for testimony. *Id.* at 22.  He further argues that the proposed expert will be "attacking the Defendant[']s character with no basis in which to do so other than inference." *Id.*  Therefore, the defendant argues, allowing Agent Gibson to testify will mislead the jury, and the risk of prejudice substantially outweighs any probative value. *Id.* at 23.

The Federal Rules of Evidence, and particularly Rule 702, compel the Court to perform a "gatekeeping" function concerning the admissibility of expert scientific evidence. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993)). In performing this task, the Court must consider whether the party offering the evidence has shown:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Id.* (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998)). The analysis is equally applicable in the arena of non-scientific, experience-based testimony as it is in the context of more traditional, scientific disciplines. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151-52 (1999).

While the defendant makes passing reference to this gatekeeping function, *see* doc. 144 at 21, he also argues that the Court need not serve as a gatekeeper "for those whose testimony will be more prejudicial than probative and is not designed to be used as testimony at all," *id.* at 20-21.

He argues, not that Agent Gibson is properly excluded under *Daubert* and its progeny,[2] but that the expected testimony is unduly prejudicial and subject to exclusion under Rule 403's balancing test.  *See id.* at 23. However, this analysis requires the Court to consider the proposed testimony within the framework of Rule 702.  *See* Fed. R. Evid. 702 (factors for considering admissibility of expert's opinion testimony).

Defendant first argues that Gibson has never evaluated or spoken with the defendant, and therefore will be relying on information provided to her by the Government in forming her opinions.  Doc. 144 at 19. However, Rule 702 allows an expert witness "to opine about a complicated matter without any firsthand knowledge of the facts in the case."  *Frazier*, 387 F.3d at 1260; *see also* Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("[A]n expert [may] educate the

---

[2] The Defendant has presented no challenge to the proposed expert's qualifications as an expert witness in the field of "forensic clinical psychology regarding offender behaviors and modus operandi related to targeted criminal acts, including stalking." Doc. 139 at 5-6.  While the Defendant did request a hearing on his motion *in limine*, the Court denied the request with leave to re-file so long as he explained "(1) whether the movant(s) seek(s) an evidentiary hearing or merely an opportunity to present oral argument; if only oral argument is sought, the motion should also explain why that argument cannot be presented in writing; and (2) what issues, specifically, the parties expect to raise at the requested hearing."  Doc. 167 at 2.  The defendant did not refile his request and did not request any *Daubert* hearing to challenge the offered expert. *See generally* docket.

factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case."). The fact that Gibson has not personally examined the defendant does not render her testimony inadmissible. *See United States v. Lewis*, 762 F. App'x 786, 797 (11th Cir. 2019) *judgment vacated on other grounds*, 140 S. Ct. 613 (2019).

The defendant next argues that Gibson's military service may bias her in favor of K.M.J. and her parents, as K.M.J. is also in the military. Doc. 144 at 20. "Bias in an expert witness's testimony is usually a credibility issue for the jury." *Adams v. Laboratory Corp. of Am.*, 760 F.3d 1322, 1332 (11th Cir. 2014). The defendant may explore any potential bias of the witness on cross-examination. *See United States v. Gayden*, 977 F.3d 1146, 1153 (11th Cir. 2020) (district court did not err in allowing expert witness to testify over defendant's challenge, where defendant had opportunity to cross-examine expert to demonstrate bias in formulating expert opinion.).

The focus of the remainder of defendant's argument is that Gibson's expected testimony will be based on statistics which are open to multiple interpretations, resulting in a "trial about character." Doc. 144 at 20. He expounds on this by arguing that the witness "will attempt to associate

the Defendant with an array of behavioral assumptions." *Id.*  In the defendant's view, this testimony is "not needed for a jury to decide if the Defendant did the acts in question." *Id.* at 21.  Moreover, he argues that Gibson "cannot read his mind or know his character," "cannot testify to [defendant's] intent and her predictions of how his behavior could escalate are unfounded exaggerations to the facts only the jury should decide." *Id.*

The Government offers Gibson's testimony to explain "a complicated criminal methodology comprised of behaviors which may look innocent on the surface but are not as innocent as they may appear." Doc. 157 at 18.  "[F]ederal courts have ordinarily allowed law enforcement officials to testify as experts to establish the *modus operandi* of particular crimes in order to explain the actions of the defendants." *United States v. Cross*, 928 F.2d 1030, 1050 (11th Cir. 1991) (internal cites and punctuation omitted); *see also United States v. Long*, 328 F.3d 655, 666 (D.C. Cir. 2003) ("[E]xperts may testify regarding the modus operandi of a certain category of criminals where those criminals' behavior is not ordinarily familiar to the average layperson . . . .").

The defendant has indicated that he will defend the charges against him by casting his conduct as innocent.  The Government, then, is permitted to offer an expert who can provide the jury with a framework to analyze that conduct.  Doc. 157 at 18-19.  The witness may not, however, "offer an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense."  Fed. R. Evid. 704(b).  That determination is for the jury alone.  The Government indicates that the proffered testimony "will assist the jury in its own analysis of the Defendant's behaviors in this case."  Doc. 157 at 18.  So long as the testimony does not cross that line, the Court is not convinced that it is inadmissible.  The defendant's motion *in limine* as to the testimony of Agent Gibson is **DENIED, in part**.

## G.    Defendant's Internet Search History

Finally, the defendant asks the Court to exclude 205 pages of computer searches found on his personal computer.  Doc. 144 at 24.  He argues that the searches "prove nothing," and if used will prejudice him. *Id.*  However, while defendant makes passing references to some of these

searches, *see id.* at 24-25, he does not provide the Court with a list of the searches so that it can fully understand what he seeks to exclude.

The Government argues that these records will show that he searched for the victim and her husband, including internet searches for a wedding registry in their names. Doc. 157 at 6. It further alleges that he searched for the very Woodstock, Georgia address where two of the victims (K.M.J.'s mother and father) reside, and where he ultimately traveled. *Id.* The Government contends that the search history will permit it to tell the full story, including the defendant's continued motive to harass and intimidate K.M.J. and her family. *Id.* Because the evidence is not clearly inadmissible, especially considering the sweeping request to exclude the entirety of the history, the motion *in limine* is **DENIED, in part**.

## III. CONCLUSION

Defendant's Motion *in Limine* is **GRANTED, in part**, and **DENIED, in part**. Doc. 144. His requests to exclude the statements from his WVU roommates and five cell phone videos are **GRANTED**. His request to exclude any evidence or testimony related to the Wheaton College Title IX investigation or the DuPage County, Illinois proceedings

is **DENIED**.  His request to exclude "certain statements by witnesses that include predictions of future behavior by various individuals" is **DENIED**, as too vague.  His request to exclude his references to Eugene Savonek is **DENIED**.  His request to exclude the Government's expert witness is **DENIED**.  His request to exclude his entire internet search history is **DENIED**.

     **SO ORDERED,** this 6th day of October, 2021.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA